FIRST NATIONAL BANK OF COLUMBUS, Plaintiff-Respondent, v. HANSEN, Defendant: CAPITOL INDEMNITY CORPORATION, and another, Defendants-Appellants and Third-Party Plaintiffs: WESTERN SURETY COMPANY, Third-Party Defendant: ARNOLD, and others, Additional Third-Party Defendants.

*No. 77–094.   Argued January 4, 1978.—Decided June 30, 1978*
(Also reported in 267 N.W.2d 367.)

For the appellants there were briefs by *Bruce Gillman* and *Tomlinson, Gillman & Travers, S. C.* and oral argument by *Bruce Gillman,* of Madison.

For the plaintiff-respondent there was a brief by *Thomas J. Curran* and *Curran, Curran & Hollenbeck* and oral argument by *Thomas J. Curran* of Mauston.

For additional third-party defendants-respondents there was a brief by *Cross, Wagner & Mercer* and oral argument by *Clyde C. Cross* of Baraboo.

CALLOW, J.   This appeal arises out of an action commenced in August, 1975, by the First National Bank of Columbus, Wisconsin, to recover on two fidelity bank bonds issued to insure the Bank against losses resulting from the fraudulent and dishonest acts of its employees. The defendants, Capitol Indemnity Corporation and Fidelity and Deposit Company of Maryland, are the bonding companies; the defendant David C. Hansen, is the former executive vice-president of the Bank.   The Capitol Indemnity Corporation bond insured the Bank against losses limited to $300,000 resulting from the dishonest acts of its employees, while the Fidelity and Deposit bond insured the Bank against identical losses in excess of $300,000, but not to exceed $1 million.

In its complaint the Bank alleges that between 1971 and 1975 it suffered losses in excess of $906,290.31 as a result of the dishonest and fraudulent acts of the defendant David C. Hansen, the Bank's executive vice-president; the bonding companies answered, denying liability on the bonds. The bonding companies then brought a motion for summary judgment on the ground that the Bank had notice of prior dishonest practices of Hansen and therefore that, in accordance with a provision of the bonds, the bonds terminated with respect to Hansen prior to the occurrence of these losses. The trial court denied this motion for summary judgment and this court has affirmed that order.[1]

The subject of this appeal is the third-party action commenced in December, 1975, when the bonding companies impleaded E. Clarke Arnold, John R. Caldwell, Carroll B. Callahan, Reuben Damm, Thomas Duffy, R. E. Frederick, Joseph R. Lawlor and John D. Kindschi in their individual capacities as officers and directors of the bank.[2] These defendants are also shareholders of the Bank who together hold approximately one-third of the outstanding shares. The third-party complaint alleges that the losses sustained by the Bank were proximately caused by the ordinary negligence of these officers and directors.[3] By reason of this negligence, and in the event they are found liable on the bonds, the bonding companies

[1] No. 75–891, *First National Bank of Columbus v. Hansen* (June 30, 1978 Unpublished per curiam p. 715).

[2] All of the third-party defendants are alleged to be directors; Messrs. Callahan, Frederick and Kindschi are also alleged to be officers.

[3] The specific acts of negligence alleged include the failure to exercise proper supervision over the extensions of credit and other practices of Hansen; the delegation of exclusive authority to manage the Bank to Hansen; the failure to appoint an annual examining committee to audit the affairs of the Bank; and the failure to heed repeated warnings by the U. S. Comptroller of Currency of improper internal procedures.

allege a right of subrogation to the Bank's claim against its directors for negligence which permitted the defalcations of Hansen to occur. In December, 1975, the officers and directors answered and then in March, 1977, over fourteen months later, brought a motion for summary judgment dismissing the third-party complaint on the grounds that no such subrogated claim exists in favor of the bonding companies. Solely for purposes of their motion for summary judgment, the officers and directors agreed that the allegations of ordinary negligence in the third-party complaint are true. The trial court granted this motion for summary judgment and dismissed the third-party complaint against the officers and directors on the merits.

On appeal the bonding companies contend that summary judgment in favor of the directors was error in two respects. First, they argue that the trial court abused its discretion in permitting the officers and directors to bring a motion for summary judgment fourteen months after the time permitted for such motions by sec. 270.635(1), Stats., 1973. Second, the bonding companies contend that the trial court erred in concluding that the bonding companies may not sue, on a theory of subrogation, the Bank's officers and directors for their negligence which contributed to the loss. We find no merit to either of these claims.

Sec. 270.635(1), Stats., 1973, which was in effect at the time this action was commenced, provides that notice of motion for summary judgment "shall be served within 40 days after issue is joined, subject to enlargement of time as provided in s. 269.45." Sec. 269.45(2), Stats., 1973, in turn permits the trial court in its discretion, for cause shown and upon just terms, to extend the time for making a motion for summary judgment "where the failure to act was the result of excusable neglect." The purpose of the forty-day time limitation in

sec. 270.635(1) is to prevent the use of a motion for summary judgment purely for the purposes of delay. *Snowberry v. Zellmer,* 22 Wis.2d 356, 358, 126 N.W.2d 26 (1964). Thus, where a belated motion for summary judgment is predicated on a legal issue totally dispositive of the case, the motion does not cause delay but rather expedites the disposition of the litigation, and the trial court does not abuse its discretion in permitting it. *Hartman v. Buerger,* 71 Wis.2d 393, 397, 238 N.W.2d 505 (1976). Since we affirm the trial court's decision that summary judgment was proper, we find no abuse of discretion in the trial court's decision to permit the officers and the directors to bring this motion.

The officers and directors claim that even if their negligence is proved, the bonding companies are not equitably entitled to recoup their payment on the bond from the Bank's directors on a theory of subrogation. Since this claim presents no material issues of fact and an issue of law that can be determined so as to conclude this third-party action, summary judgment is appropriate. *Jones v. Sears Roebuck & Co.,* 80 Wis.2d 321, 331, 259 N.W.2d 70 (1977).

Subrogation rests on the equitable principle that one, other than a volunteer, who pays for the wrong of another should be permitted to look to the wrongdoer to the extent that he has paid a debt or demand which should have been paid by the wrongdoer. *Garrity v. Rural Mutual Insurance Co.,* 77 Wis.2d 537, 541, 253 N.W.2d 512 (1977); *Lee v. Threshermen's Mutual Ins. Co.,* 26 Wis.2d 361 (1965). It also rests on the theory of unjust enrichment. *D'Angelo v. Cornell Paperboard Products Co.,* 19 Wis.2d 390, 400, 120 N.W.2d 70 (1963). It is a device invented by equity to compel the ultimate discharge of a debt or obligation from the one who in

good conscience ought to pay it. *United States Guarantee Co. v. Liberty Mutual Insurance Co.*, 244 Wis. 317, 12 N.W.2d 59 (1943).

Since subrogation puts the "one to whom a particular right does not legally belong in the position of the legal owner, . . 'the original right measures the extent of the new right.' " *Garrity v. Rural Mutual Insurance Co., supra,* at 541. Nonetheless, the existence of a cause of action in the subrogor is not controlling as to whether subrogation will be permitted. Subrogation is based on equity and is permitted only when the rights of those seeking subrogation have greater equity than the rights of those who oppose it. *Waukesha Savings Building & Loan Association v. Hamill,* 203 Wis. 414, 426, 232 N.W. 877 (1930) ; *see generally:* 11 Appleman, *Insurance Law & Practice,* sec. 6551 (1944). In addition, this court has held that subrogation will not be permitted where it works a result that is contrary to public policy. *American Insurance Co. v. Milwaukee,* 51 Wis.2d 346, 187 N.W. 2d 142 (1971).

These principles apply to the subrogation claims of fidelity insurers. Upon payment of the loss caused by the wrongful acts of a bonded employee, a fidelity insurer becomes subrogated to any right of action the employer may have against the defaulting employee. *See generally:* 16 *Couch on Insurance* 2d, sec. 61, 202 (1966) ; 35 Am. Jur.2d, *Fidelity Bonds and Insurance,* sec. 101 (1967). The fidelity insurer is also subrogated to the insured's claim against third persons who have not acted in good faith and with due care or who are chargeable with notice of the wrongful acts of the bonded employee. Annot., 95 A.L.R. 269 (1935) ; 35 Am. Jur.2d, *supra.* In addition, some courts have permitted the fidelity insurer to be subrogated to claims against third

persons whose ordinary negligence contributed to the loss, particularly where the third persons have benefited from the transaction. *See, e.g., Unity Telephone Co. v. Design Service Co., Inc.,* 201 A.2d 177 (Me., 1964); *Barclay Kitchen, Inc. v. California Bank,* 208 Cal. App. 2d 347, 25 Cal. Rptr. 383 (1962); *Jones v. United States Fidelity & Guaranty Co.,* 182 S.E. 560 (Va., 1935). It appears that no court has heretofore considered whether a similar subrogation action exists against the officers and directors of the insured employer for negligently permitting the default.[4]

We have previously held that the negligence of the insured employer in failing to discover the default of a bonded employee does not absolve a fidelity insurer from payment upon the bond. *First National Bank of Crandon v. United States Fidelity & Guaranty Co.,* 150 Wis. 601, 610, 137 N.W.2d 742 (1912). This is a well-recognized rule. *See generally:* 13 *Couch on Insurance,* sec. 46:233 (2d ed., 1965). The bonding companies concede that the negligence of the officers and directors of the bank is no defense to their duty to pay the losses upon the bond.

[4] In *Federal Deposit Insurance Corp. v. National Surety Corp.,* 434 F. Supp. 61 (E.D.N.Y., 1977), the fidelity insurers of an insolvent bank commenced a third-party action against the outside directors of the bank alleging that in the event the fidelity insurers are liable to the FDIC on the bond, then the outside directors are liable to them for indemnity or contribution. The directors moved to dismiss the third-party complaint based on the lack of standing of the fidelity insurers to assert the claims of the bank. The court rejected this challenge to the standing of the fidelity insurers because it held that the fidelity insurers were entitled to be subrogated to the bank's claims against third persons, such as the directors, who may have contributed to the loss. However, the opinion does not disclose whether the acts of the directors allegedly contributing to the loss were acts of ordinary negligence. Thus, despite its close factual similarity to the present case, we find the *Federal Deposit Insurance Corp. Case* of no assistance here.

Instead, they argue that since a bank has a right of action against its officers and directors for loss caused by the dishonest and fraudulent acts of an employee resulting from the officers' and directors' negligent supervision and control,[5] upon payment of this loss on the bond, they are entitled to be subrogated to that claim. However, the existence of a claim in favor of a bank against its officers and directors for negligence is not conclusive of the right of a fidelity insurer to be subrogated to that claim. A fidelity insurer will not be subrogated to the rights of its insured unless the equities in favor of the fidelity insurer are greater than those of the person against whom subrogation is invoked. *Liberty Mut. Ins. Co. v. Kleinman,* 149 Cal. App.2d 404, 308 P.2d 347, 348 (1957) ; *see generally,* Annot., 95 A.L.R. 271 (1935). We hold that the balance of equities in this case will not permit the fidelity insurer to be subrogated to the insured's claim of negligence against its own officers and directors.

■

The equitable nature of subrogation does not permit an insurer to exercise a right of subrogation against its own insured or an additional insured. *Hallmark Insurance Co. v. Crary Enterprises, Inc.,* 72 Wis.2d 472, 474, 241 N.W.2d 171 (1976) ; *Miller v. Kujak,* 4 Wis.2d 80, 90 N.W.2d 137 (1958). *See also:* 6A Appleman, *Insurance Law & Practice,* sec. 4055 (rev. ed. 1972). The rationale for this rule is that the insurer "accepts not only the risk that some third party may cause the casualty but also . . . that its own insured may negligently cause the

---

[5] Bank directors have been held liable for their negligence in supervising the affairs of the bank which permits defalcations by other officers or employees. *See, e.g., O'Connor v. First National Investors' Corp.,* 163 Va. 908, 177 S.E. 852 (1935). *See generally:* Annot., 25 A.L.R.3d 941 (1969) ; 7A Michie, *Bank and Banking,* sec. 132(a) (1973).

loss. The insurer, however, has consented to this latter risk in exchange for the premiums received for his compensation obligation." *Hallmark Insurance Co. v. Crary Enterprises, Inc., supra* at 476. Thus, in *Miller v. Kujak, supra,* we held that an insurer who paid its insured pursuant to the insurance contract could not be subrogated to the insured's claim for indemnification from his employer: "[A]ny liability of [the employer] is derived from liability on the part of Kujak. Kujak not being liable because of his status as an insured, Walske [the employer] is not liable in the premises." 4 Wis.2d at 88. Similarly, in *Interstate Fire & Casualty Co. v. City of Milwaukee,* 45 Wis.2d 331, 173 N.W.2d 187 (1970), we refused to permit a fire insurer to be subrogated to its insured's statutory claim against the city of Milwaukee for indemnification for damages caused by riots: "Clearly, if the [insurers] were allowed to recover from the city, they would in a sense be recouping their losses from their insureds. This is because any loss by a city must of necessity be passed on to its residents in the form of increased taxes." 45 Wis.2d at 338.

We think the equitable principles which deny an insurer the right of subrogation against its own insured are also applicable here. In this case the negligence of the Bank in permitting Hansen's wrongful acts to go undiscovered is but the negligence of its officers and directors whose duty is to supervise the operations of the bank. Since the bonding companies have no claim based on negligence against the Bank, we hold that equity will not permit the fidelity insurer to avoid that result by suing the officers and directors individually. In *First National Bank of Crandon, supra* at 610, we pointed out that mere negligence of the officers of the insured in failing to discover the default of a bonded employee is one of the risks

covered by the fidelity insurance, and for that reason such negligence is no defense to payment on the bond. Though the bonding companies do not here assert the negligence of these officers and directors as a defense to liability upon the bond, the fact that the negligence of the bank's agents is a risk assumed by the fidelity insurer in exchange for the premium also enters into the balance of equities in determining whether a right of subrogation is appropriate. The bonding companies have assumed the risk of that negligence which is imputable to the Bank, and we conclude, therefore, that the bonding companies may not avoid that risk simply by paying on the bond and suing these officers and directors as individuals thereafter.

The parties agree for the purposes of this motion for summary judgment that the acts of the directors alleged to have contributed to the loss are acts of ordinary negligence in supervising the affairs of the bank. The bonding companies have not alleged that these directors participated in the concealment of Hansen's dishonesty or that their neglect of their duties is tantamount to fraud or bad faith. If such culpability were proved or if the dishonesty of the defaulting employee conferred some benefit upon the directors as individuals, it is clear that the balance of equities would shift to the fidelity insurer and a right of subrogation against the directors would be proper. But lack of ordinary care by the directors and officers of the insured does not give the fidelity insurer, who is paid to assume this risk, an equitable position superior to that of the officers and directors of the bank. Without a favorable balance of equities, subrogation is improper and the judgment dismissing the third-party complaint with respect to the officers and directors must be affirmed.

434

The bonding companies also seek review of two intermediate orders pursuant to sec. 817.34, Stats. This statute permits review of intermediate orders involving the merits and necessarily affecting the judgment on an appeal from the final judgment. One of these intermediate orders denied the bonding companies' request for a protective order required by federal law if portions of confidential reports of the U. S. Comptroller of Currency are to be discovered. The bonding companies sought discovery of these reports for use at trial in the third-party action against the officers and directors. The second intermediate order denied the bonding companies leave to implead the Bank's accountants as additional third-party defendants. Because the bonding companies have not appealed from these orders directly, but rather seek their review in an appeal from a final judgment, the intermediate orders are reviewable by this court only as permitted by sec. 817.34, Stats. Neither order affects the disposition of this appeal. Therefore they do not involve the merits or necessarily affect the judgment appealed from and are not reviewable here.

*By the Court.*—Judgment affirmed.