FIDELITY & DEPOSIT COMPANY OF MARYLAND,
Plaintiff-Respondent,

CAPITOL INDEMNITY CORPORATION, Intervening Plaintiff,

v.

William C. VERZAL, Daniel A. Schulz, Robert B. Karkow, William B. Volkmann, Nicholas D. Quartaro, Frederick L. Licau, James E. Prellwitz and Victor N. Weiler, d/b/a a Partnership under the Name and Style of Conley, McDonald, Sprague & Co., Certified Public Accountants, and St. Paul Fire & Marine Insurance Company, a foreign insurance corporation, Defendants and Third-Party Plaintiffs-Appellants,

CONTINENTAL CASUALTY COMPANY,
a foreign insurance corporation,
Defendant and Co-Appellant,

GENERAL CASUALTY COMPANY OF WISCONSIN,
a Wisconsin insurance corporation,
Defendant-Respondent,

E. Clark ARNOLD, John R. Calwell, Carroll B. Callahan, Reuben Damm, Thomas Duffy, R.E. Frederic, Joseph Lawlor, John Kindschi, Western Surety Company, a foreign insurance corporation, and First National Bank of Columbus, Wisconsin, Third-Party Defendants-Respondents,

David C. HANSEN, Third-Party Defendant.†

Court of Appeals

*No. 83-772. Submitted on briefs October 17, 1984.—*
*Decided November 19, 1984.*
(Also reported in 361 N.W.2d 290.)

† Petition to review denied.

518

For defendants and third-party plaintiffs-appellants the cause was submitted on the briefs of *Borgelt, Powell, Peterson & Frauen, S.C.*, with *Thomas N. Klug* and *James S. Smith* of counsel, of Milwaukee.

For the defendant and third-party plaintiff and appellant Continental Casualty Company, the cause was submitted on the briefs of *Godfrey, Trump & Hayes*, with *Edward A. Hannan* of counsel, of Milwaukee.

For third-party defendant-respondent First National Bank of Columbus, Wisconsin, the cause was submitted on the briefs of *Curran, Curran & Hollenbeck*, with *Thomas J. Curran* of counsel, of Mauston. For third-party defendants-respondents E. Clark Arnold, et al., the cause was submitted on the briefs of *Cross, Mercer & Maffei*, with *Clyde C. Cross* of counsel, of Baraboo.

For defendant-respondent General Casualty Company of Wisconsin the cause was submitted on the briefs of

*Kluwin, Dunphy & Hankin,* with *John A. Kluwin* and *Daniel A. Riedl* of counsel, of Milwaukee.

For plaintiff-respondent Fidelity & Deposit Company of Maryland the cause was submitted on the briefs of *Tomlinson, Gillman & Travers, S.C.,* with *Bruce Gillman* of counsel, of Madison.

Before Wedemeyer, P.J., Moser and Sullivan, JJ.

SULLIVAN, J.   William C. Verzal, et al., doing business as Conley, McDonald, Sprague & Co., certified public accountants, and their insurer, St. Paul Fire & Marine Insurance Company (collectively, the accountants), appeal from a summary judgment dismissing their third-party complaint against the officers and directors of First National Bank of Columbus, Wisconsin (the directors). Because the accountants had no cause of action for contribution against the directors, we affirm the judgment dismissing their complaint.

Continental Casualty Company (Continental Casualty) appeals from a summary judgment dismissing from this action the defendant General Casualty Company of Wisconsin (General Casualty) on the ground that the policy issued by General Casualty insuring the accountants was not in effect when the alleged negligence of the accountants took place. Because no material issue of fact existed and General Casualty was entitled to summary judgment as a matter of law, we affirm the judgment dismissing General Casualty from the action.

The facts giving rise to this action are, in part, recited in *First National Bank of Columbus v. Hansen,* 84 Wis. 2d 422, 267 N.W.2d 367 (1978). The executive vice president of First National Bank of Columbus (the bank), David C. Hansen (Hansen), committed dishonest and fraudulent acts which caused losses to the bank in excess of $906,000. The plaintiffs in the present action, Capitol Indemnity Corporation (Capitol) and Fidelity and Deposit Company of Maryland (Fidelity), are the

bank's bonding companies. Capitol insured the bank against losses resulting from the fraudulent and dishonest conduct of the bank's employees up to a limit of $300,000. Fidelity insured the bank against identical losses for sums greater than $300,000 but less than $1,000,000.

Hansen's conduct was apparently discovered by the bank in February of 1975. In August of that year the bank sued its two bonding companies. In response, Capitol and Fidelity filed a third-party complaint against the bank's directors, alleging that the losses sustained by the bank were caused by the negligence of the directors and officers. Capitol and Fidelity alleged that they were entitled to recover against the directors because they were subrogated to the bank's claim against its directors. In the *Hansen* case the supreme court ruled in favor of the directors, granting them summary judgment dismissing the third-party complaint of Capitol and Fidelity.

Thereafter, the bonding companies settled the bank's claim. Fidelity paid $300,000, and Capitol paid $200,000, for a total settlement of $500,000.

Capitol and Fidelity then commenced the present action against the accountants, asserting two causes of action. In the first, Capitol and Fidelity assert equitable subrogation rights to recover from the accountants for the accountants' negligence enabling Hansen's defalcations to go undetected. In the second cause of action, Capitol and Fidelity make direct negligence claims against the accountants, independent of the claims made under the doctrine of equitable subrogation.

The accountants answered, denying any liability to Capitol and Fidelity and asserting several affirmative defenses, including the defense that the negligence of the bank and its directors was imputed to Capitol and Fidelity. The accountants then brought a third-party action against the bank's directors which action is the subject of this appeal. The accountants' allegations gen-

erally paralleled the allegations made in the earlier complaint by the bonding companies against the directors, i.e., that the directors negligently failed to supervise the bank's affairs, thus facilitating the conduct of Hansen which resulted in the bank's loss. The directors moved for summary judgment to dismiss the third-party complaint.

Conceding, for the purposes of their motion, that they were causally negligent, the directors argued that as a matter of law the accountants had no right of contribution against them. The trial judge granted the directors' motion for summary judgment and dismissed the accountants' third-party complaint. Judgment was entered on May 24, 1983, and the accountants are appealing from that judgment.

The second judgment being appealed from is that which dismissed from this action one of the defendants, General Casualty. General Casualty insured the accountants in this action against liability for "property damage" between $300,000 and $3,000,000 resulting from any "occurrence" during the policy period. General Casualty moved for summary judgment dismissing Fidelity's and Capitol's claims against it on the ground that the occurrence policy was not in effect when the alleged negligent acts and omissions of the accountants took place. The trial court ruled that there was no evidence showing any negligence by the accountants during the period subsequent to the effective date of General Casualty's policy. The trial court thus granted General Casualty's motion for summary judgment dismissing it from the case. Judgment was entered on May 12, 1983. Continental Casualty, another defendant and insurer of the accountants, appeals from that judgment.

On review of a summary judgment, our standards are the same as those used by the trial court and can be summarized in the following manner:

The court first examines the moving papers and documents to determine whether the moving party has made a *prima facie* case for summary judgment under sec. 802.08(2). To make a *prima facie* case for summary judgment, a moving defendant must show a defense which would defeat the plaintiff. If the defendant does not make out a *prima facie* case for summary judgment we need go no further. If the affidavit in support of the motion makes out a *prima facie* case for summary judgment we must then examine the affidavits in opposition to the motion. To defeat the motion the statute requires the opposing party to set forth facts showing that there is a genuine issue for trial. [Footnote omitted.]

*Kraemer Bros., Inc. v. United States Fire Insurance Co.,* 89 Wis. 2d 555, 566–67, 278 N.W.2d 857, 862 (1979).

## THIRD-PARTY COMPLAINT FOR CONTRIBUTION

In accordance with established summary judgment methodology, we first examine the papers of the movants, the directors, to determine whether they state a prima facie case for summary judgment, i.e., a defense which would defeat the claim of the plaintiffs. In their joint brief in support of their motion for summary judgment the directors state that the accountants have no right to contribution because the supreme court's determination in *Hansen, supra,* that the bank and the directors were not liable to the plaintiff insurers precludes such liability. We conclude that the directors' asserted defense presented a prima facie case for dismissal of the accountants' third-party complaint. We further conclude that the accountants set forth no facts which could defeat the directors' asserted defense. Therefore, summary judgment was appropriate.

The dismissal in *Hansen* of the insurers' action against the directors provides the controlling precedent resolving

the accountants' third-party suit against the directors. In *Hansen* the supreme court held that the bank, as the named insured in the fidelity insurance bonds, could not be held liable to its insurers for any of its causal negligence. "The equitable nature of subrogation does not permit an insurer to exercise a right of subrogation against its own insured or an additional insured." *Hansen,* 84 Wis. 2d at 431, 267 N.W.2d at 371. The court went on to hold, in effect, that the individual officers and directors of the bank were alter egos of the bank and additional insureds under the insurance bonds and thus were also immune from liability to the insurers for losses caused by the directors' lack of ordinary care. *See id.* at 432–33, 267 N.W.2d at 372.

> [T]he negligence of the Bank in permitting Hansen's wrongful acts to go undiscovered is but the negligence of its officers and directors whose duty is to supervise the operations of the bank. Since the bonding companies have no claim based on negligence against the Bank, we hold that equity will not permit the fidelity insurer to avoid that result by suing the officers and directors individually.

*Id.* at 432, 267 N.W.2d at 372. The significance of the *Hansen* ruling that the directors are immune from liability to the bank's insurers is that it establishes that there can be no common liability between the directors and the accountants giving rise to a cause of action for contribution.

■ There are three prerequisites to a cause of action for contribution: (1) Both parties must be joint negligent wrongdoers; (2) they must have common liability because of such negligence to the same person; and (3) one such party must have borne an unequal proportion of the common burden. *Hartford Fire Insurance Co. v. Osborn Plumbing & Heating, Inc.,* 66 Wis. 2d 454, 460, 225 N.W.2d 628, 631 (1975). Assuming, *arguendo,* that

the first and third elements are present in the case before us, we are persuaded that the second element cannot exist, applying the law of *Hansen, supra*. *Hansen* established that the directors never had any liability to Capitol and Fidelity, the bonding companies. Therefore, the accountants and directors cannot have a common liability to Capitol and Fidelity.

The accountants contend that the party to whom there must be common liability is the "injured party" or the party who sustained the loss. *See United States Fidelity & Guaranty Co. v. Milwaukee & Suburban Transport Corp.*, 18 Wis. 2d 1, 20, 117 N.W.2d 708, 718 (1962). The accountants argue that common liability is therefore present in this case insofar as the original "injured party," the bank, could have maintained a cause of action against either the accountants or the directors at the moment it sustained a loss as a result of their acts. While the bank may have been the original injured party, the bank is not the party to whom the damage payment, upon which contribution is sought, will be paid. That payment, if it is made, will be made to the bank's subrogees, Capitol and Fidelity. The bank has received $500,000 from Capitol and Fidelity. Capitol and Fidelity are now attempting to recover from the accountants the sums they paid to the bank.

"The right to contribution arises from common liability and ripens into a cause of action upon payment by reason of a judgment or pursuant to a reasonable settlement by a joint tortfeasor." *Hartford Fire Insurance, supra*. The accountants have not made, and will not make, any payment to the bank by reason of a judgment or settlement since no claim has been asserted against them by the bank. The accountants' liability, if any, in this action will be to the bonding companies, Capitol and Fidelity. Since it is Capitol and Fidelity to whom any payment by the accountants will be made, it is Capitol

and Fidelity to whom the accountants and the directors must have a common liability if the accountants are to get contribution from the directors. *Hansen* establishes that the directors are, and always have been, immune from liability to Capitol and Fidelity for losses caused by their ordinary negligence. We conclude that the accountants and the directors have no common liability to the plaintiffs in this action and that, therefore, the accountants are precluded from maintaining a third-party action for contribution against the directors. The trial court correctly determined that no issue of material fact existed and that the directors were entitled to judgment as a matter of law.

The accountants claim that if they are precluded from maintaining their action for contribution, they will be potentially liable for the entire loss for which Capitol and Fidelity seek recovery, even though they are only partially responsible for it. We note that in their answer the accountants expressly asserted a contributory negligence defense based on the imputation to the bank of any negligence on the part of its directors or other agents. Under the rule that a subrogee stands in the same position as its subrogors and can assert only such rights as the subrogors had and is subject to the same defenses, *see Employers Insurance of Wausau v. Sheedy,* 42 Wis. 2d 161, 164–65, 166 N.W.2d 220, 222 (1969), the accountants are not without a remedy that will afford a just and equitable result in this case.

## "OCCURRENCE" POLICY COVERAGE

Continental Casualty, a defendant liability insurer of the accountants, argues that summary judgment was wrongly granted to General Casualty, another defendant liability insurer of the accountants. General Casualty moved for summary judgment dismissing Fidelity's and

Capitol's claims against it on the grounds that its policy only protected the policy holder from liability for acts or omissions done while the policy was in effect and that the policy was not in effect when the accountants were negligent.

In support of its motion for summary judgment General Casualty submitted the affidavit of its counsel, John A. Kluwin (Kluwin). Kluwin stated in his affidavit that an expert witness of Fidelity, Donald Endres (Endres),[1] testified at deposition that the accountants were negligent in the performance of directors' examinations in 1970 through 1973 but were not negligent in the performance of such examinations in 1974 and 1975 and that the aforesaid directors' examination for 1973 was conducted prior to November 15, 1973, the effective date of the policy. Kluwin further stated that no other evidence of the alleged negligence of the accountants was contained in the record. The only paper filed in opposition to General Casualty's motion for summary judgment was the affidavit of Bruce Gillman (Gillman), an attorney for the plaintiff, Fidelity. Gillman's affidavit stated that Fidelity's expert, Endres, testified at deposition that he had not yet formulated all of his opinions on the accountants' negligence; that, contrary to Kluwin's affidavit, the record did contain evidence of occurrences of negligence by the accountants during the effective period of the policy issued by General Casualty; that Gillman, as a result of having evaluated the bank's proofs of loss and claim, had firsthand knowledge that "much of the losses allegedly suffered by the Bank as a result of the fraudulent and dishonest acts of . . . David B. [sic] Hansen, occurred on and after November 15, 1973;" and that "all or most of the duties to exercise due care, which constitute the basis for the negligence of the Defendant Accountants, continued beyond November 15, 1973, and

---

[1] Variously spelled "Endres" and "Enders" in the record.

that all or most of the breaches of said duties by the Defendant Accountants occurred on and after November 15, 1973." In granting summary judgment, the trial court reasoned that the affidavit submitted in opposition to the summary judgment motion consisted primarily of the affiant's conclusions and was "not accompanied by evidence in the form of excerpts from depositions or otherwise." The court concluded that the affidavit in opposition to the motion did not contain sufficient evidentiary facts to counter the affidavit of the movant.

Continental Casualty argues that General Casualty's occurrence policy does not preclude coverage for negligence antedating the inception of the policy. The policy provides that General Casualty agrees to indemnify the insured for all sums which the insured shall be obligated to pay by reason of liability imposed on the insured by law for loss on account of property damage "caused by or arising out of each *occurrence* happening anywhere in the world *during the policy period.*" [Emphasis added.] The policy defines "occurrence" as follows:

"The term 'occurrence' means an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage, or advertising liability during the policy period. All such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence."

Continental Casualty contends that defining an "occurrence" in terms of property damage which "results" during the policy period actually contemplates negligence predating the policy.

The trial court's decision granting summary judgment does not include any explicit legal conclusion regarding the construction of the term, "occurrence." Indeed, it is not clear whether the issue was even raised. We can

presume, however, from the result the trial court reached that the court construed the policy as covering property damage occurring during the policy period caused by negligence during the policy period. We agree with that implicit interpretation.

The meaning of an insurance policy is ordinarily a question of law. *Kraemer Bros.*, 89 Wis. 2d at 561, 278 N.W.2d at 860. Where ambiguity exists, the question becomes one for the factfinder. *Id.* However, where uncertainty exists as to the meaning of policy language but no party offers extrinsic evidence bearing on the meaning of that language, the meaning is a question of law to be determined by the court. *Id.* at 562, 278 N.W.2d at 860. In the instant case there is a dispute as to the meaning of the term "occurrence" in General Casualty's policy, but since no extrinsic evidence was offered bearing on that meaning, the question was one of law for the trial court and may be determined independently on appeal. *See id.* We interpret General Casualty's policy as affording no coverage for damages arising out of the accountants' negligence in allowing Hansen's fraudulent acts to go undetected because the accountants' allegedly negligently-performed 1973 directors' examination occurred prior to the inception of General Casualty's policy. We interpret General Casualty's policy definition of "occurrence" to require initial reference to the event or act or omission which results in damage. We reject Continental Casualty's assertion that coverage under the policy exists if the date on which the resulting damage arises or is discovered falls within the policy period.

We note initially that the phrase, "during the policy period," is employed twice in the relevant portion of General Casualty's policy. First, the policy states that coverage will extend to property damage arising out of "each occurrence . . . during the policy period." Then

the policy defines "occurrence" as an event which "results in . . . property damage . . . during the policy period." We interpret this language as requiring that both the event giving rise to liability and the resulting damages take place during the policy period.

The definition of "occurrence" in General Casualty's policy is essentially the same as that contained in the liability insurance policy construed in *Kremers-Urban Co. v. American Employers Insurance Co.*, 119 Wis. 2d 722, 351 N.W.2d 156 (1984). In *Kremers-Urban* the word "occurrence" was defined in the policy as " '(1) an event, or continuous or repeated exposure to conditions, or (2) an accident, which *causes* bodily injury or property damage during the policy period, which is neither expected nor intended by the insured . . . .' (Emphasis supplied.)" *Id.* at 739, 351 N.W.2d at 165. The supreme court concluded that the plain meaning of that language was that "occurrence" referred to the event or accident and not to the resulting injury. "Coverage is predicated not upon the result which might give rise to ultimate liability, but upon the event or accident which occurred during the policy period." *Id.*

General Casualty's definition of occurrence contains the additional requirement that the "property damage," as well as the "accident," occur during the policy period. However, the reasoning employed in *Kremers-Urban* persuades us that, whether or not the occurrence policy also requires the damages to accrue during the policy period, the event giving rise to the damages must take place during the policy period in order to invoke coverage. Holding otherwise would be contrary to what we believe were the reasonable expectations of the parties based on the policy's language. The parties could reasonably have expected that the occurrence policy would cover losses due to negligent acts or omissions occurring during the

policy period. The parties could not reasonably have expected the policy to cover losses arising during the policy period as the fortuitous consequence of negligence which occurred at some time before the policy's inception. Accordingly, we affirm the summary judgment granted in favor of General Casualty.

In summary, because no common liability exists between the accountants and the directors vis a vis the bonding companies, Capitol and Fidelity, the trial court correctly granted summary judgment dismissing the accountants' third-party suit for contribution against the directors. Secondly, because the occurrence policy issued to the accountants by General Casualty was not in effect when the accountants' allegedly negligent acts or omissions took place, the trial court correctly granted summary judgment dismissing General Casualty as a defendant from this action.

*By the Court.*—Judgments affirmed.