**HOME INDEMNITY COMPANY, Plaintiff–Appellant,**

v.

**Robert E. SHAFFER, et al., Defendants–Appellees.**

No. 87–3441.

United States Court of Appeals, Sixth Circuit.

Argued June 17, 1988.

Decided Aug. 31, 1988.

William H. Woods (argued), Dennis D. Liston, McNamara and McNamara, Home Indem. Co., Columbus, Ohio, for plaintiff-appellant.

John J. Finnigan, Jr., R. Gary Winters (argued), Harold G. Korbee, Michael D. Eagen, Cincinnati, Ohio, for defendants-appellees.

Before LIVELY and JONES, Circuit Judges, and PECK, Senior Circuit Judge.

PER CURIAM.

Plaintiff Home Indemnity Company ("Home") appeals the summary judgment for defendants, directors and officers of Liberty Savings Association ("Liberty"), in this subrogation action. Home brought this diversity action to recover $579,922.46 that Home paid in settlement of claims for loss by Liberty under a fidelity bond issued by Home indemnifying Liberty for certain specified losses. For the reasons stated herein, we affirm the district court's judgment.

In May 1977 Home issued a Savings and Loan Blanket Bond to Liberty. Under the terms of the bond, Home agreed to indemnify Liberty for losses suffered by Liberty through the dishonest or fraudulent acts of its employees. In August 1983 Liberty filed a proof of loss with Home alleging losses of $579,922.46. The claim was based on the conversion of $98,372.46 by Richard Doty, former president and managing officer of Liberty, and related loan losses total-

ling $481,550.00. Four loan transactions were responsible for the losses: a $100,000 loan in October 1981 to Richard D'Onofrio, a friend to Doty; a $90,000 loan in November 1981 to Robert D'Onofrio, Richard's brother; a $150,000 loan in November 1981 to C & C Foods, Inc. (later Charlie Chan's Restaurants), D'Onofrio's company in which Doty had a substantial stock interest; and a $150,000 loan in March 1982 to Charlie Chan's Restaurants. The two loans to the D'Onofrio brothers were unsecured and were extended without loan applications or financial statements in violation of Liberty's loan policy. Neither loan was ever repaid. Similarly, the loans to C & C and Charlie Chan's Restaurants were made despite the fact that the loan application forms were left largely blank, financial information was lacking, and the value of the security accepted for the loans was insufficient. These loans were not repaid.

Pursuant to its obligation under the bond, Home settled the claims for loss and received a general assignment of Liberty's right of recovery. Home commenced this action in August 1984. Home's amended complaint alleged that defendants Robert Shaffer, Kathleen Ayres, David Lippert, John Rittenhouse, and Fred Schatzmann, all directors and/or officers of Liberty, had been negligent, grossly negligent, and in violation of their fiduciary duties, because they approved loans that violated Liberty loan policies and statutory requirements, failed to properly supervise the making of loans, and failed to adopt customary procedures that would avoid the making of improper loans. Home's subsequent motion for summary judgment elaborated on these theories of liability.

Defendants filed a cross-motion for summary judgment. They argued that under the better view of law, a fidelity insurer may not recover from the insured's officers and directors for negligence. Defendants maintained that the evidence, even when viewed in a light most favorable to Home, permitted only a finding of negligence, and did not support a finding of fraud or bad faith, as would be necessary to allow the insurer to exercise its subrogation rights.

The district court granted defendants' motion for summary judgment and denied Home's motion. Noting that this case was one of first impression in the Sixth Circuit and under Ohio law, the district court carefully analyzed the case law precedent from other jurisdictions. The district court followed *First National Bank of Columbus v. Hansen*, 84 Wis.2d 422, 267 N.W.2d 367 (1978), and *Dixie National Bank of Dade County v. Employers Commercial Union Ins. Co. of America*, 759 F.2d 826 (11th Cir.1985) (applying Florida law), two of the few cases which have addressed this issue. In *Hansen* the Wisconsin Supreme Court stated that:

> [T]he existence of a claim in favor of a bank against its officers and directors for negligence is not conclusive of the right of a fidelity insurer to be subrogated to that claim. A fidelity insurer will not be subrogated to the rights of its insured unless the equities in favor of the fidelity insurer are greater than those of the person against whom subrogation is invoked. *Liberty Mut. Ins. Co. v. Kleinman*, 149 Cal.App.2d 404, 308 P.2d 347, 348 (1957); *see generally*, Annot. 95 A.L.R. 271 (1935). We hold that the balance of equities in this case will not permit the fidelity insurer to be subrogated to the insured's claim of negligence against its own officers and directors.

The equitable nature of subrogation does not permit an insurer to exercise a right of subrogation against its own insured or an additional insured. *Hallmark Insurance Co. v. Crary Enterprises, Inc.*, 72 Wis.2d 472, 474, 241 N.W.2d 171 (1976); *Miller v. Kujak*, 4 Wis.2d 80, 90 N.W.2d 137 (1958). *See also:* 6A Appleman, *Insurance Law & Practice*, sec. 4055 (rev. ed. 1972). The rationale for this rule is that the insurer "accepts not only the risk that some third party may cause the casualty but also that its own insured may negligently cause the loss. The insurer, however, has consented to this latter risk in exchange for the premiums received for his compensation obligation." *Hallmark Insurance Co. v. Crary Enterprises, Inc., supra*, 72 Wis. 2d at 476, 241 N.W.2d 171.

... We think the equitable principles which deny an insurer the right of subro-

gation against its own insured are also applicable here. In this case the negligence of the Bank in permitting Hansen's wrongful acts to go undiscovered is but the negligence of its officers and directors whose duty is to supervise the operations of the Bank. Since the bonding companies have no claim based on negligence against the Bank, we hold that equity will not permit the fidelity insurer to avoid that result by suing the officers and directors individually. In *First National Bank of Crandon [v. United States Fidelity & Guaranty Co.], supra,* 150 Wis. [601], at 610, 137 N.W. 742, we pointed out that mere negligence of the officers of the insured in failing to discover the default of a bonded employee is one of the risks covered by the fidelity insurance, and for that reason such negligence is no defense to payment on the bond. Though the bonding companies do not here assert the negligence of these officers and directors as a defense to liability upon the bond, the fact that the negligence of the bank's agents is a risk assumed by the fidelity insurer in exchange for the premium also enters into the balance of equities in determining whether a right of subrogation is appropriate. The bonding companies have assumed the risk of that negligence which is imputable to the Bank, and we conclude, therefore, that the bonding companies may not avoid that risk simply by paying on the bond and suing these officers and directors as individuals thereafter.

267 N.W.2d at 371–72. The Florida Supreme Court, to which this same issue was certified by the Eleventh Circuit, adopted the reasoning of *Hansen. Dixie National Bank,* 759 F.2d at 828 (11th Cir.1985). Both the Florida and Wisconsin courts also emphasized that evidence of fraud, bad faith, or dishonesty on the part of the directors or officers would shift the equities in favor of the fidelity insurer and permit a right of subrogation. *Id.; Hansen,* 267 N.W.2d at 372.

The district court in the case now before us thus held "that a fidelity insurer in the absence of fraud, bad faith, or evidence that the individual directors derived a benefit from the defaulting employer's dishonesty, may not recover from the insured's officers and directors." Because there was no evidence that the directors and officers had acted other than negligently or with gross negligence, the district court granted summary judgment in defendants' favor. Home has timely appealed from this judgment.

In reviewing the district court's holding in this area of law not yet directly addressed by Ohio courts, we are guided by the principles that:

In the absence of controlling decision on the issue at hand, federal courts exercising diversity jurisdiction must attempt to predict how the state courts will act in the future. *Filley v. Kickoff Publishing Co.,* 454 F.2d 1288, 1291 (6th Cir.1972), and a district court's interpretation of state law is given considerable weight by the courts of appeals. *Wright v. Holbrook,* 794 F.2d 1152, 1155 (6th Cir.1986); *Martin v. Joseph Harris Co.,* 767 F.2d 296, 299 (6th Cir.1985); *Vaughn v. J.C. Penney Co.,* 822 F.2d 605, 608 (6th Cir. 1987).... [W]e must remain sensitive to the nature and scope of our review function and will defer to the district court's interpretation of state law if that interpretation is permissible. *See Wright,* 794 F.2d at 1155; *Martin,* 767 F.2d at 299.

*Burdo v. Ford Motor Co.,* 828 F.2d 380, 382–83 (6th Cir.1987). We believe that the district court's interpretation is permissible, and affirm its decision in that light. It has long been established in Ohio, as in other jurisdictions, that subrogation is an equitable right. "The right of subrogation only exists where, from all the circumstances of the case, it ought in equity and good conscience to exist." *Newcomb v. The Cincinnati Insurance Co.,* 22 Ohio St. 382, 383 (1872) (syllabus). Ohio law also follows the general rule that "an insurer who has paid the loss resulting from a peril insured against may be subrogated to all claims which the insured may have against any person by whose negligence the injury was caused, is inapplicable if the injury was caused by negligence of the insured himself." *Builders & Manufacturers Mutual*

*Casualty Co. v. Preferred Automobile Ins. Co.,* 118 F.2d 118, 121–22 (6th Cir.1941) (applying Ohio law). Given these basic tenets of Ohio law, the district court's decision that equity does not permit Home to recover for this loss is permissible. As noted in *Hansen, supra,* the rule preventing an insurer from exercising subrogation against its own insured stems from the fact that, in exchange for a premium, the insurer has accepted that risk that its own insured may negligently cause the loss. Although Liberty is the named insured and its directors and officers are not named insureds, as Home points out, nonetheless Liberty is an entity which can only act through its agents. The negligence of Liberty is the negligence of its officers and directors who neglected their duties to supervise Doty's activities and loans. Allowing Home to recover against the Liberty directors and officers would in essence allow Home to avoid a risk it assumed and bargained for in issuing the fidelity bond and in accepting a premium.

We have considered other arguments raised by Home; however, in light of our disposition of this case on the above grounds, we find it unnecessary to address them. The judgment of the district court is hereby affirmed.