In re John Roy PETERSON and Lisa Jean Peterson, Debtors.

David ZIGLIN and Janice Ziglin, Plaintiffs,

v.

John Roy PETERSON and Lisa Jean Peterson, Defendants.

Bankruptcy No. 88–03552.
Adv. No. 88–0343.

United States Bankruptcy Court, E.D. Wisconsin.

Aug. 25, 1989.

Gregory A. Grobe, Weiss, Berzowski, Brady & Donahue, Milwaukee, Wis., for plaintiffs.

William S. Pocan, Jastroch & LaBarge, S.C., Waukesha, Wis., for defendants.

## DECISION

M. DEE McGARITY, Bankruptcy Judge.

The plaintiffs, David and Janice Ziglin, filed a complaint against the debtors, John Roy and Lisa Jean Peterson, requesting that the debtors' obligation to the Ziglins be declared nondischargeable for alleged intentional misrepresentation, "misrepresentation: strict responsibility," negligent misrepresentation and defalcation under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4). These various causes of action against the debtors are still pending and are not the subject of this decision.

The defendants filed a motion for leave to bring a third party complaint or, in the alternative, to compel the plaintiffs to reduce the amount of damages sought against them by $9,309, the amount paid by the debtors to Paul Pfaffle ("Pfaffle"), proposed third party defendant. The proposed third party complaint claims that the defendants have a right of indemnification and/or contribution from Pfaffle for breach of an oral contract by either failing to perform or negligently performing work under a contract between Pfaffle and the debtors for work to be done on the plaintiffs' car.

For the reasons indicated below, the court finds that it does not have jurisdiction to hear the proposed third party complaint. Therefore, the motion for leave to bring the complaint will be denied. The motion to compel amendment of the plaintiffs' complaint to reduce damages will likewise be denied.

## FACTS

In July, 1986, the Ziglins purchased a 1954 Jaguar XK120, in running condition, for $6,700. Prior to the purchase, the Ziglins paid the Petersons, who owned a business known as Autosports/Autowerkes, to inspect the vehicle. The Petersons allegedly told the Ziglins not only that the car could be restored, but that the Petersons could competently do the restoration. The Ziglins then paid the Petersons a total of $26,409 over several months to accomplish that restoration.

The proposed third party complaint says that approximately six weeks after the Ziglins delivered the car to the Petersons to begin restoration, the Petersons subcontracted with Pfaffle, doing business as Hillside Auto Body, to do certain body work on it. The Petersons paid Pfaffle $9,309 for that work. The Petersons allege that the work was either never done or, in the alternative, negligently done.

In January, 1987, Autosports/Autowerkes went into a Chapter 11 reorganization. The Ziglins were not listed as creditors. In December, 1987, the Ziglins discovered that the business was closed, and they were unable to locate Mr. Peterson. They then attempted to recover their car and found only some unassembled pieces allegedly having little or no value.

In August, 1988, the Petersons filed their personal Chapter 7 bankruptcy petition. This petition listed the Ziglins as creditors.

The Ziglins filed a nondischargeability complaint for $33,109 against the Petersons, and the Petersons moved the court to allow the third party complaint against Pfaffle as a proceeding "related to" the bankruptcy. The issue now is whether the court has jurisdiction over this third party dispute which would allow the court to hear the debtors' claim against Pfaffle.

## DISCUSSION

The jurisdictional authority of the bankruptcy court is conferred by 28 U.S.C. § 1334. It reads in pertinent part as follows:

(a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings *arising under Title 11*, or *arising in* or *related to cases* under title 11.

28 U.S.C. § 1334 (emphasis added).

The jurisdiction conferred on the district court by 28 U.S.C. § 1334 may be exercised by the bankruptcy court as specified by 28 U.S.C. § 157. The district court may refer to the bankruptcy court "cases under" Title 11, proceedings "arising under" Title 11, proceedings "arising in" cases under Title 11, and proceedings "related to" cases under Title 11. 28 U.S.C. § 157(a). Such referral has been made in this district.

Under 28 U.S.C. § 157(b)(1), the bankruptcy court may hear all "cases under" Title 11, i.e., the bankruptcy itself commenced by the filing of a petition. The bankruptcy court may also hear "core proceedings;" that is, proceedings that either arise under Title 11 or arise in a case under Title 11. 28 U.S.C. § 157(b)(1). Proceedings "arising under" Title 11 involve rights which are specifically conferred by Title 11, such as contested dischargeability proceedings, proceedings to recover preferences and similar rights that would not exist had there been no bankruptcy. *Matter of Wood*, 825 F.2d 90, 96 (5th Cir.1987). Proceedings "arising in" a bankruptcy case are usually claims that would have no existence absent the bankruptcy, such as administration expenses, but are not expressly created by Title 11. *Id.* at 97. A nonexhaustive list of "core proceedings" is in 28 U.S.C. § 157(b)(2). None of the actions listed as core proceedings would exist but for the bankruptcy; therefore, they constitute the core or heart of the bankruptcy process. Finally, the bankruptcy court may hear noncore proceedings that are "related to" a bankruptcy case and, unless the parties have consented to entry of a final order by the bankruptcy court, may make recommended findings to the district court for a final order. 28 U.S.C. § 157(c)(1). Unless a proceeding fits under one of these specified categories, it cannot be heard by the bankruptcy court. *In re Coulthard*, 98 B.R. 940 (Bankr.E.D.Wis.1989).

The nondischargeability complaint in this case is undeniably a core proceeding. 28 U.S.C. § 157(b)(2)(I). The defendants do not argue that their proposed third party complaint is a core proceeding or a proceeding "arising under" Title 11. They argue instead that it is "related to" a case under Title 11.

The Third Circuit developed a test, subsequently adopted in this circuit, to determine whether a proceeding is "related to" a bankruptcy case and as such can be heard by the bankruptcy court. *In re Pacor, Inc.*, 743 F.2d 984 (3rd Cir.1984). A proceeding is related to a bankruptcy case if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. *Id.* at 994. In *Pacor*, a Mr. and Mrs. Higgins filed a products liability suit against a distributor of asbestos, Pacor. Pacor filed a third party complaint against the manufacturer, Johns–Manville, which then filed bankruptcy. Pacor sought to remove the entire controversy to the bankruptcy court. The Third Circuit said the Pacor–Manville action was related to the bankruptcy, but the original Higgins–Pacor suit was not. The bankruptcy court, therefore, had no jurisdiction to hear it. The court said the Higgins–Pacor dispute would have no effect on the bankruptcy estate of Johns–Manville. It would not alter the rights, liabilities, options or freedom of action of the debtor in a way which could impact on the handling and administration of the bankruptcy estate. It was, at best, a mere precursor to the potential third party claim for indemnification by Pacor against Manville.

The Seventh Circuit, by which this court is bound, has also used the *Pacor* test: a dispute is "related to" the bankruptcy only when it affects the amount of property available for distributions or the allocation of property among creditors. *Matter of*

*Xonics, Inc.*, 813 F.2d 127, 131–32 (7th Cir.1987). The allocation of property among creditors would be affected if the application of secured property to the debt of one creditor would result in larger shares of the estate being distributed to other creditors. *Xonics* was remanded to determine if other creditors would be affected by the outcome of the dispute between the two creditors involved. This can be contrasted with the situation wherein no creditor other than the parties involved would be affected by the outcome of the dispute. *In re Kubly,* 818 F.2d 643, 645 (7th Cir.1987); *see also In re Chicago, Rock Island and Pacific Railroad Company (Sanborn II),* 794 F.2d 1182, 1187 (7th Cir.1986). If such is the case, the bankruptcy court loses "related to" jurisdiction as soon as the property is abandoned and is no longer property of the estate. *Id.*

Applying those tests to the instant case, the court must determine whether, under any circumstances, the dispute between the defendants and Pfaffle could affect the amount of property available for distribution or the allocation of property among creditors of the Petersons' bankruptcy estate; or, whether the outcome could affect any other creditor besides the parties involved. Both the initial complaint and the proposed third party complaint must be taken together and all facts alleged in the complaints assumed to be true.

If the defendants' obligation to the Ziglins is found to be nondischargeable, the defendants propose to claim a right to indemnification or contribution by Pfaffle for his allegedly negligent or nonexistent body work on the car. To determine whether this claimed right to indemnity or contribution could conceivably affect the bankruptcy estate, it must first be assumed that the debt is nondischargeable either because of the Petersons' defalcation or because of their intentional misrepresentation. Then the principles of indemnity and contribution must be applied to determine the effect on the estate and on the Ziglins' recovery. Mere negligence on the Petersons' part would, of course, be dischargeable, and no right of indemnification or contribution against Pfaffle would arise.

Indemnity requires a full 100% reimbursement and shifts the entire loss from one tortfeasor to another who should bear it instead. *Herman v. United States,* 382 F.Supp. 818, 819 (E.D.Wis.1974). There is no claim by the defendants that Pfaffle was to be responsible to the Petersons for the entire restoration of the car; he was to do "certain body work" only, which we must assume to be worth $9,309 since that is what the Petersons paid him. As to that portion, the Petersons would be entitled to indemnity if Pfaffle were shown to be a tortfeasor who should bear that amount instead of the Petersons. If that were accomplished, the amount for which Pfaffle would be responsible ($9,309), subtracted from the total claim ($33,109), would only reduce the amount of the nondischargeable debt but not to the point where Pfaffle would have to pay the Ziglins the whole $33,109. This would have no effect on the amount of property in the estate available for distribution to creditors, nor would it affect any other creditor. In short, this claim for indemnification cannot be considered "related to" the case, and the bankruptcy court has no jurisdiction over it.

The defendants also propose to claim a right of contribution from Pfaffle. There are three prerequisites to a cause of action for contribution: (1) Both parties must be joint negligent wrongdoers; (2) they must have common liability because of such negligence to the same person; and (3) one such party must have borne an unequal proportion of the common burden. *Fidelity & Deposit Co. v. Verzal,* 121 Wis.2d 517, 524, 361 N.W.2d 290, 293 (Ct.App.1984); *Hartford Fire Ins. Co. v. Osborn Plumbing,* 66 Wis.2d 454, 460, 225 N.W.2d 628, 631 (1975).

Assuming that the first two elements were met and Pfaffle's proportion of the common burden were found to be as much as the entire $33,109, there would still be no effect on the bankruptcy estate nor on any other creditor.

The Petersons also assert the independent claim that Pfaffle, by his intentional or negligent breach of contract, caused direct harm to the Petersons by damaging their business reputation and forcing them

into bankruptcy. Whether this cause of action belongs to the estate or to the debtors because of being abandoned by the trustee, it is a state law breach of contract action. If it were abandoned to the debtors and they were to prevail, they could keep any recovery, and the bankruptcy estate would not be affected. If it belonged to the trustee, however, the trustee and not the debtors would have to pursue it for the benefit of the estate. Consequently, the bankruptcy court does not have jurisdiction over this independent breach of contract claim either.

Finally, there are no grounds for requiring the plaintiffs to reduce their damage claim by $9,309. The debtors may still assert that their liability should not include the $9,309 paid to Pfaffle, but it is too early in the proceedings to make that determination.

A separate order will be entered denying the debtors' motions to file a third party complaint and to compel reduction of the damage claim.