Western United Dairy Company, a Corporation, Plaintiff-Appellee, v. Continental Mortgage Company, a Corporation, Defendant-Appellant.

Gen. No. 48,060.

First District, First Division.

November 21, 1960.

Giachini, Ley and Maclean, of Chicago (William C. Maclean and Anthony J. Pauletto, of counsel) for appellant.

F. M. Silverstein, of Chicago (Leonard J. Braver, of counsel) for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

Plaintiff claimed title to two refrigerators purchased by it at a chattel mortgage sale. Defendant, by virtue of having a conditional sales contract, refused possession. The trial court entered summary judgment against defendant on the pleadings and, upon a subsequent hearing on the question of damages, awarded judgment for plaintiff in the amount of $3,000.00. Defendant appeals.

On February 4, 1957, Hussman Refrigeration, Inc. sold to A. Schuessler, doing business as 1st Avenue Super Mart, two Hussman refrigerators under a conditional sales contract. On the same date Schuessler executed a chattel mortgage to plaintiff for various items of equipment, including the above cases, and the chattel mortgage was recorded of record. Continental Mortgage Company loaned Schuessler $5,000.-00 on February 19, 1957, distributing $3,274.22 to Hussman, in full payment of their contract, and $1,725.78 to Schuessler. The conditional sales contract was satisfied and the note marked paid. Continental, upon acquiring the two cases, entered into a new conditional sales contract with Schuessler. Schuessler later de-

faulted on the chattel mortgage and on October 14, 1957, plaintiff purchased the cases at a chattel mortgage sale. Continental, who was in possession of the cases as a result of a replevin suit, refused to give up the chattels.

Continental's theory is that it has a superior claim to the chattels under the doctrine of conventional subrogation as distinguished from legal subrogation.

The case of Automobile Service Corp. v. Community Motors, Inc., 312 Ill. App. 263, 38 N.E.2d 512, presents a factual situation similar to the present case. There Benson purchased an automobile from a dealer under a conditional sales contract. Thereafter Benson executed a chattel mortgage to plaintiff. Several months later Benson purchased another car from defendant and traded the old car in as part payment. The defendant, not knowing of the existing chattel mortgage of the plaintiff, discharged the original sales contract and subsequently sold the old automobile. Plaintiff sued for conversion. The trial court held for defendant. This court in reversing held for plaintiff on the theory that a conditional vendee has an interest which he can validly mortgage and "when defendant paid the balance due under the conditional sales agreement, the lien of plaintiff's mortgage became paramount." We agree with Continental's counsel that it appears that the defense of conventional subrogation was not raised in this case, and therefore does not necessarily control the case at bar. Knight v. St. Louis, I. M. & S. R., Co., 40 Ill. App. 471, aff'd 141 Ill. 110.

 Our courts have long applied conventional subrogation to transactions involving real estate. Kaminskas v. Cepauskis, 369 Ill. 566, 17 N.E.2d 558; Home Sav. Bank of Chicago v. Bierstadt, 168 Ill. 618, 48 N. E. 161; Tyrrell v. Ward, 102 Ill. 29; Detroit Steel Products Co. v. Hudes, 17 Ill. App. 2d 514, 151 N.E.2d 136; Kankakee Federal Sav. & Loan Ass'n v. Arnove,

134

318 Ill. App. 261, 47 N.E.2d 874. For an extensive discussion of cases applying this doctrine in other jurisdictions, see Martin v. Hickenlooper, 59 P.2d 1139 (Utah). Conventional subrogation gives a third party, who loans a landowner money with which to discharge a prior lien, with the express (though not necessarily written) agreement that the third party will then be in the position of the prior lienor, priority over intervening lienors to the extent of the discharged lien. It differs from "legal" subrogation in that the third party would be a "volunteer," with no obligation to discharge the prior lien or interest in the encumbered property, except for the agreement.

■ ■ We agree with plaintiff that conventional subrogation has been applied primarily in cases involving real estate, and should not be extended to the situation before us. We do not base our decision solely on the distinction that our case involves chattels rather than land, but rather on the pronounced difference in the attitude of our courts when dealing with conditional sales liens rather than other forms of security. Prior to our adoption of the Uniform Sales Act, Ill. Rev. Stat. Ch. 121½, § 1–77 (1959), our courts gave no effect to these liens against innocent third parties. See Sherer-Gillett Co. v. Long, 318 Ill. 432, 149 N. E. 225. Although the Sales Act changed this, the legislature has not required that these liens be recorded. Due to the adverse effect these secret liens have on open dealings in chattels, our courts have consequently strictly limited their use to actual vendor-vendee situations and have refused to give them effect when they are used as mere financing arrangements. See Raymond v. Horan, 323 Ill. App. 120, 55 N.E.2d 99; First State Bank of Shannon v. Harter, 301 Ill. App. 234, 22 N.E.2d 393.

In Raymond v. Horan, plaintiff lent one Coburn money to purchase restaurant equipment, and on the

same day Coburn executed a bill of sale for the equipment to plaintiff, who then sold it back to Coburn under a conditional sales contract. The Appellate Court refused to give any effect to the conditional sales lien when a subsequent judgment creditor of Coburn levied on the equipment. The Court stated:

> "A conditional sale contract contemplates a bona fide sale made by a vendor to a vendee and a conditional bill of sale cannot be used to secure the interest of one who though purporting to sell personal property merely lends money to facilitate its purchase from a third person. Judicial sanction cannot be given to the employment of a conditional sale contract for the purpose of securing a loan made on personal property or for the purpose of securing a loan made to enable a purchaser to buy personal property from a third person."

■ ■ Conventional subrogation is based on equitable principles, and we do not think the equities here would justify our extending it to this situation. Continental asks the benefit of a type of security lien which it was not in their power to create directly. It is a type of lien which our courts have carefully restricted due to its secrecy and its harsh remedial incidents. The transactions before us were ordinary arms-length commercial dealings between competent businessmen. The chattel mortgage statute is designed to protect innocent persons who would deal with property on the strength of the ostensible ownership by virtue of possession. By ordinary diligence Continental could have found out that a chattel mortgage existed against the cases they purchased. True, Continental believed it was obtaining a first lien, but this belief was not induced by fraud or misrepresentation on the part of the chattel mortgage holder.

136

Continental relies on its contention that plaintiff would not be prejudiced since it would be in the same position that it would have been in, had defendant not paid off the prior lien. This we find highly speculative. Almost eight months elapsed between the time Continental refinanced the cases and the time plaintiff purchased at his foreclosure sale. If Schuessler's financial troubles had been allowed to come to a head sooner, as they presumably would have without the refinancing arrangement, the value of the cases would not have been decreased by the eight months depreciation. This is an element not present in the usual conventional subrogation cases, since they involve land. We therefore hold that plaintiff should not be subrogated to the original conditional sales lien.

For the reasons above, the judgment of the Municipal Court is affirmed.

Affirmed.

KILEY, P. J. and MURPHY, J., concur.