Continental Mortgage Company, a Corporation, Plaintiff-
Appellant, v. Hussmann Refrigeration, Inc., a Cor-
poration, Defendant-Appellee.

Gen. No. 51,009.

First District, Third Division.

March 23, 1967.

Ralph Jonas, of Chicago (Marks, Marks and Kaplan,
of counsel), for appellant.

Samuel S. Siegel, of Chicago, for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of
the court.

In an action for breach of implied warranties of title
and possession arising from the sale of certain refrigera-
tion equipment, judgment on the pleadings was entered
in favor of the defendant Hussmann Refrigeration, Inc.,
(Hussmann). Plaintiff Continental Mortgage Company
(Continental) contends that the pleadings raised a
genuine issue of fact as to whether a contract of sale
existed between Continental and Hussmann.

The pleadings consist of Continental's second amended complaint (complaint) and Hussmann's amended answer (answer) thereto. The undisputed facts to be derived from the pleadings are as follows: On February 4, 1957, Hussmann entered into a conditional sales contract with one A. Scheussler, doing business as First Avenue Super Mart, pursuant to which Hussmann undertook to sell to Scheussler five pieces of refrigeration equipment for $6,611.57. According to their agreement Scheussler paid $3,337.35 as a down payment and Hussmann retained title to the chattels until the balance of the purchase price was paid. Scheussler defaulted on the conditional sales contract and as a result title to the goods remained with Hussmann.

Continental alleged in its complaint that Hussmann then offered to sell the equipment to it for the sum of $6,611.57 and that the offer was communicated in a letter dated February 15, 1957, from Hussmann, in which it agreed to sell the equipment on payment of the above amount. In its answer Hussmann admits the letter, but contends that it was written as part of a series of negotiations between Continental and Scheussler, culminating in Continental's refinancing the purchase by paying off Scheussler's debt to Hussmann. Hussmann alleged that the agreement between Scheussler and Continental provided that Continental would pay Scheussler $1,725.78 for his equity of $3,337.35 (the down payment) and that Continental would then pay the balance of $3,274.22 to Hussmann to discharge Scheussler's obligation under the conditional sales contract; that no independent sale or transaction was made between Continental and Hussmann and hence the implied warranties may not be invoked. To determine whether this is a genuine issue of fact which should have been tried, we must examine the factual background as set forth in the pleadings.

Hussmann, as the manufacturer, sold equipment to Scheussler who, needing financing, negotiated a loan from Continental. Upon default by Scheussler on its loan agreement, Continental gained possession of the equipment. It subsequently learned that on February 4, 1957, the date of the original purchase by Scheussler from Hussmann, Scheussler had executed a chattel mortgage on the equipment to Western United Dairy; that Scheussler defaulted, and that Western United bought the chattels at a foreclosure sale. Continental refused Western United's demand for possession of the equipment, and Western United brought an action for conversion against Continental and obtained a judgment for $3,000 which was affirmed by the Appellate Court. Western United Dairy v. Continental Mortg. Co., 28 Ill App2d 132, 170 NE2d 650. Continental was required to pay that sum, and it argues that it incurred this liability and sustained the damages as a result of the breach of implied warranties by the defendant Hussmann.

Hussmann averred that it installed the equipment on Scheussler's premises on February 7, 1957; that at that time Scheussler informed Hussmann it would be unable to comply with the conditions of the contract, and that it (Scheussler) was negotiating a loan with Continental for the balance of the purchase price and for further financing of its business. The answer further denied that Hussmann warranted good title to the chattels, denied that Hussmann had knowledge of the chattel mortgage, and asserted that the final agreement between Continental and Hussmann provided that Hussmann would accept the payment of the balance of $3,274.22 from Continental to extinguish Scheussler's debt.

In its order, the trial court recited that it had considered the pleadings along with the decision in Western United Dairy v. Continental Mortg. Co., supra, and found the issues in favor of Hussmann. Because of the

trial court's reliance on this earlier decision and Hussmann's contention that this is controlling legal precedent, it is necessary to examine that case as it relates to the issue before us. The court there held that Western United's chattel mortgage constituted a prior claim to the equipment as opposed to that asserted by Continental under its conditional sales contract. Continental's position had been that it obtained a prior lien under the doctrine of conventional subrogation when it paid off Scheussler's debt; that is, that Continental had succeeded to the rights of Hussmann, the original vendor. This argument was rejected by the court, which held that the doctrine of conventional subrogation would not be extended to chattels. Basic to Continental's argument for subrogation, however, was the existence of a financing agreement between Continental and Scheussler, and the facts as set forth in the opinion reveal that the court assumed that Continental had refinanced Scheussler's purchase and had not bought the goods directly from Hussmann. This factual setting is of importance in the instant case because it negates the present position taken by Continental; that is, that Continental is Hussmann's vendee.

■■ To sustain its contention that the prior decision in Western United Dairy v. Continental Mortg., supra, is controlling judicial precedent, Hussmann must show that the principle of estoppel by verdict is applicable. This doctrine was defined in People v. Haran, 27 Ill2d 229, 188 NE2d 707, as follows:

"Where some controlling fact or question material to the determination of both causes has been adjudicated in the former suit by a court of competent jurisdiction and the same fact or question is again at issue between the same parties, its adjudication in the first cause will, if properly presented, be conclusive of the same question in the later suit, ir-

respective of the question whether the cause of action is the same in both suits or not." (P 231.)

The court held that where the prior determination is relied upon, it must appear that the particular issue in question was "necessarily tried and determined." In the instant case the specific question is whether the dealings between Continental and Hussmann constituted a contract of sale to which warranties attach. This was not decided in the Western United case.

The judgment is reversed and the cause is remanded with directions to take such other and further proceedings as are not inconsistent with the views herein expressed.

Judgment reversed and cause remanded with directions.

SULLIVAN, P. J. and DEMPSEY, J., concur.