463 So.2d 1147 (1985)
DIXIE NATIONAL BANK OF DADE COUNTY, Etc., Plaintiff,
v.
EMPLOYERS COMMERCIAL UNION INSURANCE COMPANY OF AMERICA, Etc., Defendant-Third Party, Plaintiff-Appellant,
v.
Dr. Thomas F. CARNEY, Etc., Third Party Defendants-Appellees.
No. 65118.
Supreme Court of Florida.
February 7, 1985.
*1148 James E. Tribble of Blackwell, Walker, Gray, Powers, Flick & Hoehl, Miami, for plaintiff-appellant.
Edward G. Rubinoff of Preddy, Kutner & Hardy, and Michael J. Cappucio of Fowler, White, Burnett, Hurley, Banick & Strickroot, Miami, for defendants-appellees.
ALDERMAN, Justice.
The United States Circuit Court of Appeals for the Eleventh Circuit has certified the following questions for this Court to address because they are questions of Florida law with no controlling precedent in the decisions of this Court. These questions are:
(1) In an action by a fidelity bond insurer against the directors of a bank and the directors' insurer for the directors' negligence in failing to prevent embezzlement losses, if the fidelity bond insurer obtains rights against the insured's directors through legal or equitable subrogation and also obtains a written assignment of claims from the bank, does Florida *1149 law require the fidelity insurer to establish superior equities as between the fidelity insurer and the directors and their insurer in order to recover?
(2) If so, does the fidelity insurer's status as a paid surety establish superior equities in favor of the insured's directors and the directors' insurer where the fidelity insurer merely asserts the directors' negligence as the basis for recovery?
Consistent with the decision of the United States District Court, Southern District of Florida, we answer these questions in the affirmative.
The facts are succinctly stated in the certificate. The Dixie National Bank of Dade County ("the Bank") commenced this litigation against the appellant, Employers Commercial Union Insurance Company of America ("Employers"), to recover on a "banker's blanket bond" policy of insurance for an embezzlement loss resulting from the defalcations of the Bank's former cashier. The Bank's insurer, Employers, denied the claim, asserting subrogation rights arising upon the payment of the Bank's claim. Employers then filed a third-party complaint against the directors of the Bank and American Home Life Insurance Company ("Home"), the directors' insurer, under a director's liability policy.
Employers and the Bank settled their dispute, and the Bank assigned Employers its right to any claims which it might have against the third-party defendants. The settlement agreement provided in part:
By the execution of this Agreement, Dixie National Bank of Dade County does hereby set over, assign, transfer and convey all of its right, title and interest in and to any claims it may have against all parties which may have caused, directly or indirectly, any of the losses set forth in the Complaint referred to above now pending in the United States District Court for the Southern District of Florida.
The third-party defendants filed a motion for judgment on the pleadings on the theory that the equitable nature of subrogation precludes a bank's liability insurer from seeking indemnity from the bank's directors for loss occasioned by the fraudulent acts of an employee of the bank. Specifically, the third-party defendants argued that Employers did not have superior equities and therefore could not be subrogated to any claims that the Bank may have against the directors and Home. They also alleged that Employers, as the Bank's fidelity insurer, could not assert, by way of a subrogation right, the directors' negligence as a basis for recouping its payment to the Bank because any such negligence was one of the risks assumed pursuant to the insurance agreement. Employers then filed a supplemental third-party complaint alleging the settlement agreement as a supplemental basis for its claim against the directors and their insurer.
The district court treated the motion for judgment on the pleadings as a motion for summary judgment and entered partial summary judgment against Employers on the issue of ordinary negligence. In his order, the district judge adopted the reasoning of First National Bank of Columbus v. Hansen, 84 Wis.2d 422, 267 N.W.2d 367 (1978), and held that no right of subrogation exists in favor of a fidelity insurer against its insured's directors for ordinary negligence in the conduct of their supervisory duties. On the issue of the Bank's assignment of its claims, the court rejected Employers' attempt to improve its position, holding that notwithstanding the assignment subrogation would be enforced only in favor of a meritorious claim and after a balancing of the equities. The court concluded that because Employers, a compensated surety, cannot establish equities superior to those of the directors, a balancing of the equities precluded Employers from asserting a subrogation claim against the Bank's directors for their ordinary negligence. The court added that Employers would be entitled to subrogation upon proof of culpability by the third-party defendants in the nature of fraud or bad faith.
*1150 Thereafter, in order to narrow the remaining issues, the parties executed a pretrial stipulation. In brief summary, these stipulations recited that the embezzling employee, Robert Hansen, was employed by the Bank commencing in 1964 and was a vice president/cashier of the Bank from 1971 until his discharge in May of 1974, following discovery of his defalcations. During the period of his employment at the Bank, particularly while he was cashier, Hansen was a trusted employee and was head of its operations.
The embezzlements consisted primarily of diverting checks for payment of interest on securities from correspondent banks to checking accounts rather than recording them in interest receivable accounts and diverting interest credits received on federal funds sold to checking accounts rather than crediting them to the Bank's income account. Hansen accomplished these embezzlements by preparing general ledger tickets that channelled the income and money of the Bank to his own account.
The Bank's directors first became aware of Hansen's embezzlements during May of 1974. Prior to that time, the Bank had not been involved in any other defalcations by any other employees, and the directors were unaware of any problems involved with the handling of the Bank's funds. The parties stipulated that the directors did not personally gain or stand to gain from Hansen's embezzlements. Employers also conceded that its proof does not establish actual knowledge of the embezzlement, dishonest purpose, or furtive design. Employers contended that its evidence would establish that the directors were grossly negligent for failing properly to direct and manage the Bank's affairs.
The parties filed a joint motion for clarification in which they requested the district court to define more specifically the meaning of "bad faith" as used in the court's order granting partial summary judgment. They asked the court to determine if proof of gross negligence without personal gain by the directors would be sufficient for Employers to sustain its cause of action. In response, the court entered an order stating that, in the context of a subrogation action by a compensated surety against the directors of its insured for an embezzlement loss, the term "bad faith" implies the conscious doing of a wrong because of dishonest purpose and requires a person to act affirmatively with furtive design or ill will. In that case, it would encompass actual knowledge on the part of the directors of Hansen's embezzlement scheme and their failure to act on such knowledge.
Based on the stipulated facts, the district court concluded that there was no evidence that the directors committed bad faith or fraud; therefore, Employers did not have a subrogable cause of action against the directors or Home to recover payments to the Bank on the embezzlement claim. Accordingly, the district court entered final summary judgment against Employers, and Employers appealed to the Eleventh Circuit.
Employers emphasizes the distinction between legal (or equitable) subrogation and conventional subrogation and contends that the balancing of equities does not apply in conventional subrogation claims based on an assignment. The directors, appellees in the federal court, respond that subrogation in Florida is an equitable doctrine controlled by the relative equities of the matter and that to succeed in subrogation, a claimant must affirmatively establish superior equities in himself as against the party against whom subrogation is sought to be enforced. Subrogation in Florida, they maintain, is not an absolute right. Appellees assert that Employers cannot avoid the requirement of establishing superior equities merely by obtaining a written assignment from the Bank. This would emphasize form to the detriment of substance. They point out that the distinction between legal subrogation and conventional subrogation is significant only in determining the source of the right and not in delineating the parameters of the remedy available to the assignee party. A conventional subrogee obtains standing to assert a subrogation *1151 claim which he would otherwise lack. Conventional subrogation allows him to stand in the shoes of those who are subrogees by operation of law, and he thus must meet the same equitable requirements that courts impose on those subrogees. They state that when Employers paid Dixie National under its claim, it attained the rights the law accords a surety to claims against third persons, and Employers' position was neither improved nor lessened by virtue of the assignment.
We agree with appellees and hold that, in Florida in an action by a fidelity bond insurer against the directors of a bank and their insurer for the directors' negligence in failing to prevent embezzlement losses, in order to recover, the fidelity insurer is required to establish superior equities as between the fidelity insurer and the directors and their insurer where the fidelity bond insurer has obtained rights against the directors through legal or equitable subrogation and also has obtained a written assignment from the bank. We agree with the rationale of the United States District Court which explained:
Florida adheres to the general rule that an insurer is entitled to subrogation to recover from any third party who is legally liable for the actual loss sustained by its insurer. Miami National Bank v. Pennsylvania Insurance Company, 314 F. Supp. 858 (S.D.Fla. 1970); 18A Fla.Jur. § 945; 11 Appleman, Insurance Law and Practice § 6564 (rev.ed. 1972). The right to subrogation, however, is not absolute, but depends upon the equities and attending facts and circumstances of each case. Compania Anonima Venezolana de Nav. v. A.J. Perez Exp. Co., 303 F.2d 692 (5th Cir.1962). In order to state a cause of action, the subrogation claimant must affirmatively establish superior equities in himself over the one against whom subrogation is sought to be enforced. See Ruwitch v. First National Bank of Miami, 291 So.2d 650 (Fla. 3d DCA 1974), cert. denied, 305 So.2d 196 (Fla. 1974).
Dixie National Bank v. Employers Commercial Union Insurance Co. of America v. Carney, No. 75-768-CIV-EBD (S.D.Fla. 1982), slip op. at 2. The district court rejected Employers' attempt to improve its position as a "conventional subrogee" because of the Bank's assignment of claims to it and quoted the following bench-mark definition of subrogation from our early decision of Boley v. Daniel, 72 Fla. 121, 72 So. 644, 645 (1916):
Subrogation is the substitution of one person in the place of another with reference to a lawful claim or right. Subrogation arises by operation of law, where one having a liability or a right or a fiduciary relation in the premises pays a debt due by another under such circumstances that he is, in equity, entitled to the security or obligation held by the creditor whom he has paid. This is called "legal subrogation." Conventional subrogation depends upon a lawful contract, and occurs where one having no interest in or relation to the matter pays the debt of another, and by agreement is entitled to the securities and rights of the creditor so paid.
The district court correctly explained:
While Florida courts have since recognized the two types of subrogation, see Goodwin v. Schmidt, 5 So.2d 64 (Fla. 1941); Shelby Mutual Insurance Company of Shelby, Ohio v. Birch, 196 So.2d 482 (Fla. 4th DCA 1967); Bruer v. Sanford Atlantic National Bank, 247 So.2d 764 (Fla. 4th DCA 1971); Dispatch Services, Inc. v. Airport Bank of Miami, 266 So.2d 127 (Fla. 3d DCA 1972); Taussig v. Insurance Company of North America, 301 So.2d 21 (Fla. 2d DCA 1974); Indiana Insurance Company v. Collins, 359 So.2d 916 (Fla. 3d DCA 1978); Ranger Insurance Company v. Travelers Indemnity Company, 389 So.2d 272 (Fla. 1st DCA 1980), a per se rule that equitable principles have no application in conventional subrogation cases has never been adopted. The courts have merely applied the distinction to describe situations which call for the application of the subrogation doctrine *1152 as arising either by agreement or by operation of law. E.g., Goodwin v. Schmidt, supra; Ranger Insurance Company v. Travelers Indemnity Company, supra; 12 Fla.Jur.2d, Subrogation § 17.
Whether a right has its source in legal or conventional subrogation, the better rule is that it will be enforced only in favor of a meritorious claim, and after a balancing of the equities... . In this case, the written assignment adds nothing to the insurer's subrogation claim. Once Employers paid the loss to its insured, it became equitably subrogated to any claims the Bank might have against third parties. As between Employers and the Bank, liability was extinguished and no valid assignment giving rise to a separate cause of action against the Directors existed. United States Fidelity & Guaranty Co. v. First National Bank in Dallas, supra. See 6A Appleman, Insurance Law and Practice, § 4053 (rev. ed. 1972).
Dixie National Bank, slip op. at 3-4 (footnote omitted). It properly discussed the inapplicability of Dispatch Services, Inc. v. Airport Bank of Miami as follows:
In Dispatch Services, supra, the district court of appeal upheld a surety's right of subrogation against a bank for wrongful payment of a check forged by the insured's employee, where the insured depositor assigned to the surety all of its rights against the bank. In reaching its decision, the court relied upon the well established principle that a bank is absolutely liable to its depositor for payment of a forged check. Clearly, strong policy considerations shifted the balance of equities and mandated the result in Dispatch, and not a per se rule precluding equitable considerations from conventional subrogation claims.
Dixie National Bank, slip op. at 4 n. 4.
We also hold that the fidelity insurer's status as a paid insurer does establish superior equities in favor of the insured's directors and their insurer where the fidelity insurer merely asserted the directors' negligence as a basis for recovery. We agree with the district court's rationale for this holding. The district court stated:
In the area of fidelity insurance, the law is well settled that negligence or inattention, or anything short of actual discovery on the part of the insured employer will not defeat recovery under a fidelity bond covering the default of a dishonest employee, unless it is otherwise provided in the contract. American Employers' Ins. Co. v. Cable, 108 F.2d 225 (5th Cir.1939); Miami National Bank, supra. Cf. Phoenix Indemnity Co. v. Union Finance Co., 54 So.2d 188 (Fla. 1951) (customary rule that knowledge of an agent or officer of a corporation is imputed to the corporation is inapplicable under fidelity bond claims). The fidelity insurer, in exchange for premiums, assumes the risk of negligence on the part of the insured, and a fortiori, of the negligent actors. Thus, the same equitable considerations which preclude an insurer from maintaining a subrogation suit against its own insured, 18A Fla.Jur. § 945, preclude subrogation against the negligent directors of the insured. A fidelity insurer may not avoid its assumed risk by paying on the bond and later suing the directors of the insured on a negligence theory. Hansen, supra 267 N.W.2d at 372.
Id., slip op. at 2-3.
In Hansen, a bank sued two bonding companies to recover on two fidelity bank bonds which insured the bank against losses resulting from fraudulent and dishonest acts of its employees. The bonding companies impleaded the board of directors of the bank through a third-party complaint which alleged that the losses sustained by the bank were proximately caused by the ordinary negligence of these directors. In the event they were found liable on the bonds, the bonding companies alleged a right of subrogation to the bank's claim against its directors for their negligence which had permitted the defalcations. The trial court entered summary judgment dismissing the third-party complaint on the *1153 merits. In affirming, the Wisconsin Supreme Court held that the balance of equities would not permit the subrogation action against the directors. It reasoned:
[T]he existence of a claim in favor of a bank against its officers and directors for negligence is not conclusive of the right of a fidelity insurer to be subrogated to that claim. A fidelity insurer will not be subrogated to the rights of its insured unless the equities in favor of the fidelity insurer are greater than those of the person against whom subrogation is invoked... .
The equitable nature of subrogation does not permit an insurer to exercise a right of subrogation against its own insured or an additional insured... . The rationale for this rule is that the insurer "accepts not only the risk that some third party may cause the casualty but also that its own insured may negligently cause the loss. The insurer, however, has consented to this latter risk in exchange for the premiums received for his compensation obligation." .. .
We think the equitable principles which deny an insurer the right of subrogation against its own insured are also applicable here. In this case the negligence of the Bank in permitting Hansen's wrongful acts to go undiscovered is but the negligence of its officers and directors whose duty is to supervise the operations of the Bank. Since the bonding companies have no claim based on negligence against the Bank, we hold that equity will not permit the fidelity insurer to avoid that result by suing the officers and directors individually. In First National Bank of Crandon, supra, 150 Wis. at 610, 137 N.W.2d 742, we pointed out that mere negligence of the officers of the insured in failing to discover the default of a bonded employee is one of the risks covered by the fidelity insurance, and for that reason such negligence is no defense to payment on the bond. Though the bonding companies do not here assert the negligence of these officers and directors as a defense to liability upon the bond, the fact that the negligence of the bank's agents is a risk assumed by the fidelity insurer in exchange for the premium also enters into the balance of equities in determining whether a right of subrogation is appropriate. The bonding companies have assumed the risk of that negligence which is imputable to the Bank, and we conclude, therefore, that the bonding companies may not avoid that risk simply by paying on the bond and suing these officers and directors as individuals thereafter.
267 N.W.2d at 371-72. We agree with this rule announced by the Wisconsin Supreme Court.
Accordingly, we answer both questions certified in the affirmative.
BOYD, C.J., and ADKINS, OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.