EMPLOYERS INSURANCE OF WAU-SAU, a mutual company, as assignee of Bank of Viola, Plaintiff,

v.

Emory Lee DOONAN, Virginia Lee Doonan, Kirk Doonan, Victor Dean Doonan, Rodney E. Flores, Margaret Flores, Don Flores, Robert H. Sell, Laura J. Flores, Dan Elliott, Daniel H. Sell, Kimberly S. Elliott, Delores M. Carraher, Universal Provisions, Steve Mason, Judith Fisher, W.J. Gallagher, Glen Milliken, James Slavish and Jack Lambin, Defendants.

No. 86–4047.

United States District Court, C.D. Illinois, Rock Island Division.

July 21, 1987.

Norbert J. Wegerzyn, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., and Peter Lousberg, Lousberg, McClean, Snyder & Schwarz, Rock Island, Ill., for plaintiff.

Franklin Wallace, Winstein, Kavensky, Wallace & Doughty, Stuart Lefstein, Douglas Scovil, Ruud & Scovil, Robert Ellison, Klockau, McCarthy, Ellison & Marquis, Rock Island, Ill., David J. Mason, Mull, Hayt & Mason, Sun City, Ariz., and Frank J. Galvin, Rock Island, Ill., for defendants.

## ORDER

MIHM, District Judge.

Presently before this Court is Defendants', W.J. Gallagher, Glen Milliken, James Slavish, and Jack Lambin (hereafter Gallagher, Milliken, Slavish, and Lambin) Motion for Judgment on the Pleadings, and Defendant, Judith Fisher's (hereafter Fisher) Alternate Motion for Judgment on the Pleadings concerning the issue of the right to subrogation on the basis of a claim of negligence. After reviewing the pleadings and record created at the hearing held on March 27, 1987, the Court finds that both of the identified motions should be granted.

The claims in this case arise from the banker's blanket bond issued by Employers Insurance of Wausau (hereafter Employers) to the Bank of Viola (hereafter Bank), which insured the Bank against certain losses resulting from acts of the Bank's employees and third parties. In 1982, the Bank sustained a loss as a result of the fraudulent acts of its then president, and major (80%) stockholder, Emory Lee Doonan. The Bank's loss was reimbursed by Employers pursuant to the banker's special bond.

On May 18, 1983, Employers and the Bank entered into a release and assignment agreement, which assigned to Employers all claims that the Bank may have against any and all individuals responsible for the loss incurred. Relevant to the present motions, Employers has brought claims against the Bank's directors and officers, Gallagher, Milliken, Slavish, Lambin, and Fisher, alleging that the directors' and officers' negligence, gross negligence, and reckless conduct was the proximate cause of the Bank's loss. Employers assert that it should be permitted to recover from the directors and officers the sum paid to the Bank on the Doonan loss.

The issue presented in the Gallagher, Milliken, Slavish, and Lambin Motion for Judgment on the Pleadings is identical to the issue presented in Fisher's Alternate Motion for Judgment on the Motion to Dismiss. Therefore, the two motions will be consolidated for the purpose of this Court's analysis.

The issue presented in these motions is whether an insurance company, who paid its insured under a fidelity bond for a loss resulting from fraudulent acts of an employee, may, by obtaining an assignment from the insured bank of all causes of action that the bank may have against persons responsible for the loss, maintain a cause of action for negligence against the directors of the Bank. In essence, the Motions for Judgment on the Pleadings assert that (1) the insurer's right to prevail is subject to equitable principles that govern the doctrine of subrogation; (2) the insurer cannot avoid the application of these equitable principles by obtaining a written assignment from the Bank; (3) in balancing the equities, the paid insurer's equitable position lacks superiority to that of the Defendant directors, who are charged only with negligence; (4) accordingly, as a matter of law, a subrogation action against them cannot be sustained.

The parties concede the fact that there is no case directly on point in Illinois law. Under Illinois law, both legal (equitable) and conventional subrogation are recognized. *Makeel v. Hotchkiss*, 190 Ill. 311, 60

N.E. 524 (1901); *Western United Dairy v. Continental Mortgage Company*, 28 Ill. App.2d 132, 170 N.E.2d 650 (1960). Under Illinois law, both conventional and legal subrogation involves a balancing of the equities. *Makeel v. Hotchkiss*, 190 Ill. 311, 320 (1901). Further, subrogation can only be enforced in equity, and will not be enforced when it would work injustice to others having equal equities. *Id.*

In Illinois, conventional subrogation differs from legal subrogation in that the third party is a "volunteer," with no obligation to discharge the prior debt or interest in the encumbered property, except for an agreement to do so. *Western United Dairy v. Continental Mortgage Company*, 28 Ill.App.2d 132, 135, 170 N.E.2d 650 (1960). Conventional subrogation is based on equitable principles. *Id.*

In the present case, Employers assert that their interests lie in both legal and equitable subrogation. It asserts that its legal subrogation rights arise out of the banker's special bond, and the fact that it reimbursed the Bank for its loss. Further, it asserts that its conventional subrogation rights arise from the assignment received from the Bank.

■ The Court finds Plaintiff's conventional subrogation claim to be somewhat disingenuous. As set forth in *Western Dairy*, under Illinois law a claim of conventional subrogation is founded on the fact that the third party so satisfies the debt as a "volunteer." *Western United Dairy v. Continental Mortgage Company*, 28 Ill. App.2d 132, 170 N.E.2d 650 (1960). In the present case, Employers certainly did not volunteer, in the true sense of the word, to reimburse the Bank. It received consideration for its acts, in the form of an insurance premium. Thus, the Court concludes that the interest that Employers possess are those that stem from their right to legal subrogation. What Employers seem to have is nothing more than a right to legal subrogation confirmed in writing. The Court finds that the Bank's assignment of claims adds no dimension to Employers' interest, nor does it give Employers a superior equitable position. There-

fore, for Employers to succeed on their claim, it must show that the equities when balanced, tip in its favor. *Makeel v. Hotchkiss*, 190 Ill. 311, 60 N.E. 524 (1901).

In Illinois, legal subrogation is viewed consistently with how the concept seems to be viewed in other states, such as Florida and Wisconsin. *National Casualty Company v. Caswel and Company*, 317 Ill. App. 66, 45 N.E.2d 698 (1942). In light of the fact that Illinois' position regarding the nature of legal subrogation is consistent with that of the Florida and Wisconsin courts, this Court expressly adopts, in this case, the analysis followed in *First National Bank of Columbus v. Hansen*, 84 Wis.2d 422, 267 N.W.2d 367 (1978), and *Dixie Bank of Dade County v. Employers Commercial Union Insurance Company of America*, 463 So.2d 1147 (Fla.1985).

■ Generally, there are three situations in which a fidelity insurer has been held to be subrogated to an insured's claims against third persons and employees. First, upon payment of a loss caused by the wrongful acts of a bonded employee, a fidelity insurer becomes subrogated to any right of action the employer may have against the defaulting employee. *First National Bank of Columbus v. Hansen*, 84 Wis.2d 422, 267 N.W.2d 367 (1978). See generally, 16 Couch on Insurance 2d, § 61, 202 (1966); 35 Am.Jur.2d, Fidelity Bonds and Insurance, § 101 (1967). Second, a fidelity insurer is subrogated to the insured's claim against third persons, who have not acted in good faith with due care, or who are chargeable with notice of the wrongful acts of the bonded employee. Annot. 95 ALR 269 (1935); 35 Am.Jur.2d, supra. Third, even though Illinois has not spoken to the following contention, some courts have held that a fidelity insurer is also subrogated to claims against third persons whose ordinary negligence contributed to the loss, particularly when the third person has benefitted from the transaction. See, e.g., *Unity Telephone Company v. Design Service Company, Inc.*, 160 Me. 188, 201 A.2d 177 (1964); *Barclay Kitchen, Inc. v. California Bank*, 208 Cal.App.2d 347, 25 Cal.Rptr. 383 (1962); *Jones v. United*

*States Fidelity and Guarantee Company,* 165 Va. 349, 182 S.E. 560 (1935).

In *First National Bank of Columbus v. Hansen,* 84 Wis.2d 422, 267 N.W.2d 367 (1978), the plaintiff, First National Bank of Columbus, filed suit against the defendants, Capitol Indemnity Corporation and Fidelity and Deposit Company of Maryland, bonding companies, to recover on two fidelity bank bonds issued to insure the bank against losses resulting from the fraudulent and dishonest acts of its employees. *First National Bank of Columbus v. Hansen,* 84 Wis.2d 422, 267 N.W.2d 367, 369 (1978). When the bank suffered losses in excess of $906,290.31, as a result of the dishonest and fraudulent acts of the bank's executive vice president, David Hansen, the bonding companies denied liability on the bond. 267 N.W.2d at 369. A third party complaint was filed by the bonding companies against the officers and directors of the bank, in their individual capacity. *Id.* The third party complaint alleged that the losses sustained by the bank were proximately caused by the ordinary negligence of these officers and directors. *Id.* The bonding companies alleged a right of subrogation to the bank's claim against its officers and directors for negligence, which permitted the defalcations of Hansen to occur. *Id.* at 370.

In *Hansen,* the court held that the balancing of the equities will not permit the fidelity insurer to be subrogated to the insured's claim of negligence against its own officers and directors. 267 N.W.2d at 371. The rationale for this rule is that the insurer "accepts not only the risk that some third party may cause the casualty, but also ... that its own insured may negligently cause a loss." 267 N.W.2d at 372. The insurer accepts this risk in exchange for receipt of an insurance premium. *Id.*

The court found that the negligence of the bank permitting Hansen's wrongful acts to go undiscovered is but the negligence of its officers and directors, whose duty it is to supervise the operations of the bank. 267 N.W.2d at 371. Since a bonding company has no claim based on negligence against the bank, the court held that equity will not permit the fidelity insurer to avoid that result by suing the officers and directors individually. *Id.*

In *Hansen,* the acts of the directors alleged to have contributed to the loss are acts of ordinary negligence in supervising the affairs of the bank. 267 N.W.2d at 371. However, the court noted that the balancing of the equities would have been different if the bonding companies had alleged that the directors either acted in bad faith (by participating in the concealment of Hansen's dishonesty), or if the dishonesty of Hansen, the defaulting employee, conferred some benefit upon the directors as individuals. *Id.* at 372. The facts and allegations as they were, the court held that a lack of ordinary care by the directors and officers of the insured did not give the fidelity insurer, who is paid to assume this risk, an equitable position superior to that of the officers and directors of the bank. *Id.*

In *Dixie National Bank of Dade County v. Employers Commercial Union Insurance Company of America,* 463 So.2d 1147, Dixie National Bank of Dade County (hereafter Dixie) brought suit against Employers Commercial Union Insurance Company of America (hereafter Commercial Union) to recover on a banker's blanket bond insurance policy, for a loss resulting from the bank's former cashier's embezzlement of funds. *Id.* at 1149. Commercial Union denied the claim, asserting subrogation rights arising upon the payment of the bank's claim. *Id.* Commercial Union then filed a third party complaint against the directors of the bank, under a directors liability policy. Subsequent to settlement of the claim between Commercial Union and the Bank, Dixie assigned Commercial Union its right to any claims which it might have against the third party defendants.

In its third party complaint, Commercial Union alleged that the directors had been grossly negligent by their failure to properly direct and manage the bank's affairs. *Id.* at 1149. The facts reflected that the directors first became aware of Hansen's embezzlement in May of 1974. The parties stipulated that the directors did not person-

ally gain or stand to gain from Hansen's embezzlement. Further, Commercial Union conceded that its proof did not establish "actual knowledge of the embezzlement, purpose, or furtive design theory."

The court held that "negligence or inattention, or anything short of actual discovery on the part of the insured employer will not defeat recovery under a fidelity bond covering the default of a dishonest employee, unless it is otherwise provided in the contract." *Id.* at 1152. "The fidelity insurer, in exchange for premiums, assumes the risk of negligence on the part of the insured." *Id.* Therefore, the same equitable considerations which preclude an insurer from maintaining a subrogation suit against its own insured, precludes subrogation against the negligent directors of the insured. *Id.* A fidelity insurer may not avoid its assumed risk by paying on the bond and later suing the directors of the insured on a negligence theory. *Id.*

In the present case, the Gallagher, Milliken, Slavish, Lambin, and Fisher Motions for Judgment on the Pleadings attack Employers' claims which request recovery from the directors and officers for the Doonan loss on the basis of negligence. In these claims, Employers assert that the directors' and officers' inadequate supervision of the day to day affairs of the Bank, inattention to Doonan's dishonest activities, and failure to hold an August board of directors meeting, constitutes negligence, which permits Employers' recovery from the directors and officers.

It is clear, from the holdings of the courts in *Hansen* and *Dixie,* that "negligence or inattention, or anything short of actual discovery on the part of the insured employer will not defeat recovery under a fidelity bond covering the default of a dishonest employee...." *Dixie National Bank of Dade County v. Employers Commercial Union Insurance Company of America,* 463 So.2d at 1152. As such, this Court is led to the inescapable conclusion that the ordinary negligence of Gallagher, Milliken, Slavish, Lambin and Fisher is insufficient to sustain a claim by Employers alleging a right of subrogation to the Bank's claim against its officers and directors for negligence. Therefore, this Court GRANTS the Motion for Judgment on the Pleadings of the Defendants, Gallagher, Milliken, Slavish, and Lambin and Fisher's Alternate Motion for Judgment on the Pleadings and directs that Counts 14, 17, and 20 of Employers' Complaint be stricken. Further, this Court again notes, as it did during oral argument, that its ruling on these pending motions is limited to Employers' claims which are based upon mere negligence. This ruling does not purport to address the question of whether or to what extent Employers can maintain a claim against the Defendants based upon allegations of gross negligence or reckless disregard or bad faith.