The **FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION,** as Receiver for Knox Federal Savings & Loan Association, Plaintiff,

v.

The **AETNA CASUALTY & SURETY CO.,** a Connecticut Corporation, Defendant,

v.

J. Garrett **BURDETTE,** et al., Third–Party Defendants.

Civ. A. No. 3–88–132.

United States District Court, E.D. Tennessee, N.D.

July 28, 1988.

John L. Conlon, Hopkins & Sutter, Chicago, Ill., Elizabeth S. Tonkin, Walt, Dyer & James, Knoxville, Tenn., for Federal Sav. and Loan Ins. Corp.

Arnold Tackett, Chattanooga, Tenn., J. Michael Winchester, Lacy & Winchester, P.C., David L. Buuck, Michael M. Downing, Claiborne, Davis, Buuck & Hurley, Charles A. Wagner, III, Wagner, Myers & Sanger, P.C., R. Franklin Norton, Norton & Luhn, P.C., Randall E. Nichols, Harwell & Nichols, Charles W.B. Fels, Ritchie, Fels & Dillard, P.C., Richard L. Hollow, McCampbell & Young, Steven Oberman, Daniel & Oberman, Ronald C. Koksal, Butler, Vines, Babb & Threadgill, Johnathan H. Burnett, Hodges, Doughty & Carson, Lewis S. Howard, Jr., Howard & Ridge, Archie R. Carpenter, Carpenter & O'Connor, Bernard E. Bernstein, Bernstein, Susano & Stair, Knoxville, Tenn., for J. Garrett Burdette, et al.

William B. Luther, Luther, Anderson, Cleary, Ruth & Speed, Chattanooga, Tenn., for Aetna Cas. & Sur. Co.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This matter comes before the court on the motions of several third-party defendants[1] to dismiss the third-party complaint of defendant, Aetna Casualty & Surety Company (Aetna) pursuant to Fed.R.Civ.P. 12(b)(6), or in the alternative for summary judgment pursuant to Fed.R.Civ.P. 56, as to this third-party complaint. The parties having fully briefed the issues, and the court having heard oral argument on July 18, 1988, in Knoxville, Tennessee, the court will grant third-party defendants' motions in part and deny them in part.

---

1. Third-party defendant C.A. Ridge filed the first such motion, and the following third-party defendants have joined in this motion: J. Garrett Burdette, Ralph E. Newman, Jr., Burton B. Simcox, Steve Curtis, William H. Curtis, the Estate of Howell C. Curtis, William F. Regas, and John J. Duncan. In addition, third-party defendant Alex Curtis has also joined in the Ridge motion, and has added a fourth issue for consideration. Third-party defendants Clayton Christenberry, Jr., and John J. Duncan, Jr., have joined in the Alex Curtis motion. Because the questions raised in the three issues discussed in the Ridge motion apply to all third-party defendants, the court will treat this motion as if it has been brought by all third-party defendants.

On February 24, 1988, the FSLIC, as Receiver of the now defunct Knox Federal Savings & Loan Association (Knox), filed this action against Aetna, seeking payment under a Savings and Loan Blanket Bond, No. 46 F 710 BCA, which Aetna had issued to Knox effective May 1, 1982. The FSLIC alleges that this bond covers, to the extent of its policy limits, the loss suffered by Knox resulting from the misconduct of its former president and managing officer, Arnold Tackett, and others acting pursuant to his direction.[2] Aetna has filed an answer to this complaint, and has also filed a third-party action against Tackett and other former Knox officers and directors for indemnification should it find itself liable to the FSLIC under the bond. Third-party defendants move to have this third-party complaint dismissed on the following grounds: failure to state a valid subrogation claim, expiration of the applicable statute of limitations, pre-maturity of subrogation claim, and the failure to allege negligence on the part of certain third-party defendants.[3]

*Discussion*

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), all allegations in the pleading in question are assumed to be true, and all reasonable inferences are to be drawn in favor of the non-movant. *Westlake v. Lucas,* 537 F.2d 857, 858–59 (6th Cir.1976); *Great Lakes Steel, Division of National Steel Corp. v. Deggendorf,* 716 F.2d 1101, 1104–1105 (6th Cir.1983). Taking all well-pled allegations as true, a motion to dismiss will be granted only if the non-movant will be unable to recover on its claim. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983), *cert. denied,* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984).

Summary judgment under Fed.R.Civ.P. 56 is appropriate when the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. In such a case there is no genuine issue for trial. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, all inferences drawn from the facts must be viewed in a light most favorable to the non-moving party. *Matsushita, supra,* 475 U.S. at 587, 106 S.Ct. 1356. However, a movant need not negate every aspect of the non-movant's claim, it need only support its claim that there is no genuine issue of fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

I. Validity of subrogation claim.

Third-party defendants argue that the law is clear that a fidelity bond insurer, such as Aetna in the instant case, may not maintain a cause of action against officers and directors of a bank for negligence which lead to a loss which the bond allegedly covers. Aetna responds that third-party defendants are in error, and that the law does indicate that such an action may be brought. Aetna adds that this type of action is in the best interests of public policy, as bank officials have fiduciary duties imposed on them, and if Aetna could not bring this action, bank officials would have no incentive to follow these fiduciary duties.

Under Tennessee law, there are two types of subrogation, legal and convention-

---

**2.** Complaint by the FSLIC, ¶ 10. It should be noted that the allegations concerning the misconduct of Tackett are found in Count I of this complaint. Count II of the complaint, dealing with the alleged misconduct of other Knox employees, is of no relevance to the instant motion.

**3.** On July 15, 1988, the FSLIC filed a motion for this court to defer its ruling on the statute of limitations question. The basis for this motion is that in a related action involving the FSLIC and third-party defendants, *FSLIC v. Burdette, et*

*al.,* 696 F.Supp. 1183, No. 3–87–809 (E.D.Tenn.), C.A. Ridge has filed a motion for summary judgment based on the same arguments that he makes in this motion. The FSLIC asks the court to defer ruling on this particular issue until the motion in *Burdette* has been fully briefed. Because the court believes that such an action will further the interests of justice, the court will defer ruling on the statute of limitations question until the Ridge motion in *Burdette* is ready for resolution.

al. *United States Fidelity & Guaranty Co. v. Elam*, 198 Tenn. 194, 278 S.W.2d 693, 701 (1955). *See also Tennessee Farmers' Mutual Insurance Co. v. Rader*, 219 Tenn. 384, 410 S.W.2d 171, 173 (1966). Conventional subrogation is based on an agreement or stipulation, and the extent of this right is measured by the agreement and by the rights of the party granting the right. *Tennessee Farmers', supra.* Legal subrogation arises out of a relationship by operation of law. *United States Fidelity & Guaranty, supra*, 278 S.W.2d at 701. Because there is nothing in the bond in question that deals with subrogation, any subrogation rights Aetna has must arise by operation of law.

■ In this particular subrogation context, two different situations may arise. Each must be understood before a meaningful discussion of third-party defendants' motions can take place. The first situation arises when an insurer pays an insured bank for losses caused by the acts of bank employees, and then the insurer brings an action against those "active" wrongdoing employees causing the loss paid by the insurer. It is clear that in such a situation the insurer has a general right to recover against these active wrongdoers, as the insurer has all the rights against these employees that the bank had, *Railway Co. v. Manchester Mills*, 88 Tenn. 653, 14 S.W. 314, 314 (1890); *Miller v. Russell*, 674 S.W. 2d 290, 291 (Tenn.App.1983), and because a bank has a cause of action against its officers and directors so will the insurer. *Atherton v. Anderson*, 99 F.2d 883, 887–888 (6th Cir.1938); *Neese v. Brown*, 218 Tenn.

686, 405 S.W.2d 577, 580–81 (1964).[4] An important exception to this right exists when the degree of wrongdoing alleged by the insurer is not sufficient to justify recovery under the terms of the bond. An example is found in *FDIC v. Aetna Casualty & Surety Co.*, No. 1–85–797, slip op. at 3 (E.D.Tenn., June 6, 1986) [available on WESTLAW, 1986 WL 21361], where the court would not permit a fidelity bond insurer to maintain an action against bank officials for their negligent wrongdoing when the bond in question covered only the fraudulent acts of bank officials. The rule from this case is that a fidelity bond insurer may only sue active wrongdoing bank officials when the level of wrongdoing, be it negligence or fraud, is equal to or greater than the level of wrongdoing covered by the bond in question.[5]

■ The second possible situation arises when a fidelity bond insurer pays an insured bank for losses attributable to the conduct of certain employees, and the insurer sues employees other or different from those that caused the loss paid by the insurer for failing to discover and prevent the active wrongdoing of their fellow employees. In this situation, the courts hold that the action by the insurer may not be maintained when the employees who "failed to supervise" are charged only with simple negligence. *Dixie National Bank v. Employers Commercial Union Insurance Co.*, 759 F.2d 826, 828 (11th Cir.1985); *Employers Insurance of Wausau v. Doonan*, 664 F.Supp. 1220, 1223–24 (C.D.Ill. 1987); *First National Bank of Columbus v. Hansen*, 84 Wis.2d 422, 267 N.W.2d 367, 371 (1978); *Dixie National Bank v. Em-*

**4.** Several cases cited by third-party defendants which allegedly hold that there is no such general right of subrogation are distinguishable. In *Great American Insurance Company v. United States*, 575 F.2d 1031, 1033 (2d Cir.1978); *Rock Island Bank v. Aetna Casualty & Surety Co.*, 692 F.2d 1100, 1106 (7th Cir.1982); *Fidelity National Bank v. Aetna Casualty & Surety Co.*, 584 F.Supp. 1039, 1051 (M.D.La.1984), the courts did not hold that an insurer could not seek recovery of insurance funds paid out against the wrongdoer that caused the loss which the funds covered. Rather, in each case the court recognized a general right of subrogation, but noted that the statute of limitations had run on such an insurance subrogation claim. All the courts in these cases did was to hold that there was no

such thing as an action under an implied contract of indemnification, which would have provided a longer limitations period. Since this implied contract theory is not at issue here, these cases are of no relevance.

**5.** Contrary to Aetna's assertion, *United American Bank of Memphis v. Aetna Casualty & Surety Co.*, No. 84–2225, slip op. at 2–3 (W.D.Tenn., January 16, 1986), does not hold to the contrary. In that case, the bond in question covered negligent wrongdoing, and there the court permitted the insurer to sue wrongdoing bank officials for negligence. As such, this decision is consistent with the holding in *FDIC v. Aetna.*

*ployers Commercial Union Insurance Co.*, 463 So.2d 1147, 1152 (Fla.1985). *But cf. Standard Accident Insurance Co. v. Pellecchia*, 15 N.J. 162, 104 A.2d 288, 292 (1954) (allowing the insurer of a company to sue a bank which paid out funds on a forged endorsement on the company's check); *Aetna v. Lindell Trust Co.*, 348 S.W.2d 558, 562 (Mo.App.1961) (same situation as *Pellecchia* ); *Western Surety Company v. Loy*, 3 Kan.App.2d 310, 94 P.2d 257, 261–62 (1979) (county official frauds the county, insurer is permitted to sue county accountant who failed to detect the fraud).[6] These cases hold that a fidelity bond insurer assumes the risk that a bank will negligently fail to discover the wrongdoing of an employee, therefore the balance of the equities dictates that an insurer should not be permitted to sue the officers and directors of that bank for that same negligent failure to discover the wrongdoing of fellow employees. An exception to this rule exists holding that an action for negligent supervision may be maintained against bank officials who personally benefited as a result of the fraud that they are charged with negligently failing to detect or stop, as in that case the balance of the equities comes out in favor of the insurer. *Employers Insurance of Wausau, supra,* 1223; *First National Bank of Columbus, supra,* 372.

There is a certain amount of difficulty in applying the above law to the instant case, as it is not clear in what capacity third-party defendants are being sued by Aetna (i.e., as active wrongdoers that caused the Knox loss or as Knox employees whose inadequate supervision of Knox affairs permitted fraud on Knox to occur). As to Tackett, there is no doubt, as Part III of Aetna's third-party complaint clearly indicates

that Tackett is being sued by Aetna as an active wrongdoer. As to the other third-party defendants, the third-party complaint is not as clear, as Part IV of that complaint alleges that these third-party defendants "were guilty of negligence, either simple negligence, gross negligence, or willful and wanton negligence, that was a proximate cause of or a contributing cause to the losses complained of by FSLIC in its suit against Aetna." This allegation could reasonably be read as alleging either active wrongdoing or inadequate supervision of Tackett by these third-party defendants. The FSLIC complaint in this action provides no further guidance, as paragraph ten alleges wrongdoing by Arnold Tackett "and others," and these others could be third-party defendants. Because the pleadings are not clear, the court will treat the Aetna third-party complaint as alleging both active wrongdoing and inadequate supervision by these third-party defendants.

■ With respect to active wrongdoing allegations, the applicable bond language clearly indicates that the bond covers only the fraudulent acts of Knox employees:

"(A) Loss resulting directly from one or more dishonest or fraudulent acts of an Employee, committed anywhere and whether committed alone or in collusion with others, including loss of Property resulting from such acts of an Employee, which Property is held by the Insured for any purpose or in any capacity and whether so held gratuitously or not and whether or not the Insured is liable therefor.

Dishonest or fraudulent acts as used in this Insuring Agreement shall mean only dishonest or fraudulent acts committed

---

**6.** Several cases cited by Aetna as holding contrary to the rule adopted by this court are not clear enough in certain factual aspects to be persuasive. For instance, in *FDIC v. National Surety Company*, 434 F.Supp. 61, 63 (E.D.N.Y. 1977), the insurer alleged both negligent supervision and fraud by the bank officials being sued, and the court was never specific as to which claims were being permitted. In *Manufacturers Bank & Trust v. Transamerica Insurance Co.*, 568 F.Supp. 790, 792 (E.D.Mo.1983), the court did permit the insurer to bring a

negligence action against certain bank officials, but that case was not clear as to whether this action was for negligent supervision of fellow officials or for active negligent wrongdoing. Indeed, *Community Federal Savings & Loan v. Transamerica Insurance Co.*, 559 F.Supp. 536, 538 (E.D.Mo.1983), seems to be consistent with this court's analysis, as there it was held that a bank official could be sued by an insurer as long as the official's conduct played a greater role in the loss to the bank than the wrongdoer's.

by such Employee with the manifest intent:

(a) to cause the Insured to sustain such loss; and

(b) to obtain financial benefit for the Employee, or for any other person or organization intended by the Employee to receive such benefit, other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment."

Consequently, to the extent that it is alleged that third-party defendants committed dishonest or fraudulent acts with the manifest intent to cause Knox to sustain a loss and to obtain a financial benefit as described in the above bond language, Aetna's third-party claim will remain. However, to the extent Aetna alleges active wrongdoing on the part of third-party defendants to any lesser degree, such as simple negligence or gross negligence, the third-party claim is dismissed.

■ As to allegations of inadequate supervision, to the extent mere negligence is alleged on the part of third-party defendants which has permitted the alleged fraud of Arnold Tackett to occur, the third-party complaint is dismissed pursuant to the reasoning of *First National Bank of Columbus v. Hansen,* 84 Wis.2d 422, 267 N.W.2d 367 (1978), and the cases that followed it. To the extent something more is alleged, but something less than conduct which is covered under the applicable bond language set out above, the third-party claim must still be dismissed. Just as with active wrongdoing, the court concludes that it would not be appropriate for Aetna to make a claim for alleged inadequate supervision by third-party defendants when the conduct that results in inadequate supervision is not of the degree covered by the bond in question. In other words, if the bank could not recover under a bond for inadequate supervision by its employees, neither should the bond insurer receive contribution due to this conduct, as the equities do not balance in the insurer's favor. However, this conclusion is not applicable as to negligent supervision claims against third-party defendants John J. Duncan, Jr., Alex Curtis, the Estate of Howell C. Curtis, and Joe S. Duncan, as the Aetna third-party complaint incorporates the complaint by the FSLIC against these same defendants in *FSLIC v. Burdette,* 696 F.Supp. 1183, No. 3–87–809 (E.D.Tenn.), and that complaint alleges that these four personally benefited from the alleged fraud by Arnold Tackett.[7] As mentioned above, with respect to these four third-party defendants, the balance of the equities permits an action for negligent supervision.

## II. Prematurity of subrogation claim.

■ Third-party defendants argue that because Aetna has not yet paid out anything under the bond in question, it is too early for it to be seeking subrogation. Third-party defendants argue that Aetna must wait until it pays out something before it sues third-party defendants. This argument is clearly without merit. Fed.R. Civ.P. 14(a) provides that third-party claims may be brought against any party who "is or may be liable to third-party plaintiff for all or part of the plaintiff's claim against third-party plaintiff." As such, a fidelity bond insurer may bring an action against third-parties who may be liable to the insurer for monies the insurer may have to pay under the bond, even if no money has yet been paid. *Community Federal Savings & Loan, supra,* 537; *Manufacturers Bank & Trust, supra,* 791. *See also* 6 Wright & Miller, *Federal Practice & Procedure,* § 1451 (1971).

Accordingly, as to this issue, third-party defendants' motion is denied.

## III. Allegations of negligence.

Third-party defendants Alex Curtis, John J. Duncan, Jr., and Clayton Christenberry, Jr., argue that Aetna's third-party claim is

7. Complaint in *FSLIC v. Burdette,* ¶¶ 18–22.

based on the alleged negligence of third-party defendants. They contend that there is no such negligence alleged as to them in the Aetna third-party complaint or the FSLIC complaint in *Burdette* which this third-party complaint incorporates. Aetna responds that allegations of negligence can be found in both the third-party complaint and the FSLIC complaint in *Burdette*. The court concludes that Part IV of the third-party complaint alleges negligence on the part of these three third-party defendants. Therefore, defendants Curtis and Duncan's motion on this issue is denied.[8] Since the court has dismissed the negligence claims against Christenberry, the matter as to him is moot.

*Conclusion.*

Third-party defendants' motion is granted in part and denied in part. Accordingly, the third-party complaint by Aetna is dismissed with respect to the misconduct by third-party defendants as active wrongdoers or as inadequate supervisors to the extent the misconduct is not covered under the bond in question. The only exceptions are the claims for negligent supervision made against John J. Duncan, Jr., Alex Curtis, the Estate of Howell C. Curtis, and Joe S. Duncan. As to these four, the negligent supervision claims shall remain.

So ordered.

---

**8.** At oral argument on this motion, counsel for Alex Curtis argued that notwithstanding the allegations of negligence against him, the facts as they are currently pled indicate that all the alleged wrongful loan transactions at issue occurred after he ceased any service to Knox, therefore the negligence allegations against him are unfounded. As the court stated at oral argument, it will not make any ruling on this position at this time, but Aetna is cautioned to re-examine the content of its allegations against Alex Curtis, keeping in mind the requirements of Fed.R.Civ.P. 11.